## NORTH COUNTIES HYDRO-ELECTRIC COMPANY
### v.
### The UNITED STATES.
### No. 268-53.

United States Court of Claims.
May 8, 1957.

John W. Day, Chicago, Ill., for plaintiff.

Ralph S. Boyd, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

This is an action by plaintiff for the taking of its hydro-electric power plant on the Fox River in Illinois. It is before us on defendant's pleas of *res adjudicata* and the statute of limitations

3. The mine was shut down in 1953, and leased in 1954.

and its answer, and the trial commissioner's findings of fact, opinion, and recommendation for conclusion of law.

On October 19, 1953, plaintiff filed a motion to strike defendant's defenses of *res adjudicata* and the statute of limitations. We overruled this motion because the defenses sought to be stricken were neither trivial nor plainly without merit. We did not pass on the merit of the defenses. Our opinion is reported in 118 F.Supp. 375, 127 Ct.Cl. 467.

We now proceed to consider the defense of *res adjudicata.*

The theory of plaintiff's suit is that by the erection of the Starved Rock dam on the Illinois River, completed in 1932, defendant created a condition · that caused ice jams to form below plaintiff's dam on the Fox River, which, in the nineteen years between the time the pool behind the dam had reached its full elevation in February 1933 and January 1952, had so impeded the flow of the Fox River that plaintiff's power house was twice flooded, in 1943 and 1952, and put out of operation for brief periods, and that such floods will inevitably recur at intervals of approximately every ten years.

After the flooding in March 1943, plaintiff brought an action alleging a taking of its property. We denied recovery on two grounds: first, because it had not been proven that the ice jams were caused by the Starved Rock dam; and, second, because plaintiff had not shown that it was inevitable for these ice jams to recur. See North Counties Hydro-Electric Co. v. United States, 70 F.Supp. 900, 108 Ct.Cl. 470.

■ In order to show a taking by defendant, it was necessary for plaintiff to prove both of these facts. It proved neither. Now, after a second flooding ten years later, it brings the identical action, again alleging that defendant, by the erection of the Starved Rock dam, took its property. In this action it is necessary for it to prove the same things it had to prove in the former litigation, to wit, that the Starved Rock dam caused the ice jams and the consequent floodings, and that such floodings will inevitably recur.

The only difference in the facts now known and those known when the former case was tried is that now the power house has been flooded again. But this does not prove plaintiff's case. Two floodings, one ten years after the pool behind the dam was completely full, and the other nineteen years after, do not constitute a taking. United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746; Peabody v. United States, 231 U.S. 530, 34 S.Ct. 159, 58 L.Ed. 351; Portsmouth Harbor Land & Hotel Co., v. United States, 250 U.S. 1, 39 S.Ct. 399, 63 L.Ed. 809; Portsmouth Harbor Land & Hotel Co. v. United States, 260 U.S. 327, 43 S.Ct. 135, 67 L.Ed. 287; Sanguinetti v. United States, 264 U.S. 146, 149, 44 S.Ct. 264, 68 L.Ed. 608; United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206; Cf. Camp Far West Irrigation District v. United States, 68 F.Supp. 908, 107 Ct.Cl. 263. It is necessary for plaintiff to show that such floodings will inevitably recur.

Let us suppose it to be a fact that no further floodings will recur. Then certainly there has been no taking, although there has been damage. In the first case, as in this, it was necessary to show the inevitability of the recurrence of these floods. Intervening events have made this no more possible now than it was then.

■ Plaintiff has had its day in court and, under the rule of *res adjudicata,* it cannot again litigate the same issue heretofore tried in the same cause of action against the same defendant.

Our decision between the same parties, reported in 118 F.Supp. 375, 377, 127 Ct.Cl. 467, is not to be taken as intimating any opinion one way or the other on this question. That decision was on plaintiff's motion to strike defendant's pleas of *res adjudicata* and the statute of limitations. These motions were denied solely on the ground that a motion to strike can be sustained only when the plea is trivial or plainly with-

out merit. We stated expressly: "We do not pass on the merit of this defense at this time, except to say that it is not a trivial defense; it is not one to be cast aside as plainly without merit."

We thought it had merit, but we did not think the time had come to pass on this question. Perhaps we should have, and saved the parties and the court useless trouble and expense; but we did not.

 By what we have said above, we do not mean to say that plaintiff is not also barred from again trying the first issue, that the Starved Rock dam caused the ice jam. This issue was tried in the first action and was decided adversely to plaintiff for failure of proof. But an insufficiency of evidence to prove a material issue in the former litigation does not permit litigating the same issue in another action on the same cause of action against the same defendant.

The trial commissioner says this rule does not apply where the former action was premature, but we cannot say that the former action was premature. It was brought more then ten years after the pool behind the dam was full, and after all of the effects of the erection of the dam should have been either fully known or foreseen. It was brought after the ice jam and flooding in 1943.

United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789, on which the Commissioner relies, does not say that a suit brought as soon as the Government dam is complete is premature; it says only that the owner may wait, not that he must wait, until he can determine the extent to which his property will be taken by the erection of the dam. This owner waited more than 11 years after the erection of the dam had been completed, and ten years after the pool behind it was full, and until the ice jam of 1943 and the flooding in that year. Its suit was not premature. Cf. Columbia Basin Orchard v. United States, 88 F.Supp. 738, 116 Ct. Cl. 348.

When plaintiff brought its suit it knew what it had to prove, and it thought it could prove it. It failed. Having had the day in court it had selected, it is not entitled to another. There must be an end to litigation some time, both for the sake of parties, and for the sake of other litigants who are demanding the attention of the court.

Defendant's plea of *res adjudicata* is sustained.

This action makes it unnecessary to consider the defense of the statute of limitations, and to again consider the case on its merits. For this reason, we make no findings of fact, in addition to those already found and reported in 70 F.Supp. 900, 108 Ct.Cl. 470, except to find as a fact that ice formed in the Fox River below plaintiff's dam, and plaintiff's power plant was again flooded, on January 29, 1952, and operations were not resumed until February 17, 1952.

Defendant's plea of *res adjudicata* is sustained, and plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.