PDTC OWNERS ASSOCIATION, a California Non-Profit Corporation, William Lints and James Allen, on their own behalf and on behalf of the class of persons who are members of the PDTC Owners Association, and their families, Plaintiffs,

v.

COACHELLA VALLEY COUNTY WATER DISTRICT, a body corporate and politic and a local public agency of the State of California, National American Insurance Company, a California Corporation, and National American Insurance Company, a Nebraska Corporation, Defendants.

No. CV 76–3051–GJS.*

United States District Court,
C. D. California.

Jan. 3, 1978.
As Modified Feb. 15, 1978.

* And consolidated with CV 77–323, CV 77–1635, CV 77–2095, CV 77–2782, CV 77–2783, CV 77–2871 and CV 77–3374–GJS.

Jerrold A. Fadem, Richard D. Norton, Fadem, Berger, McIntire & Norton, Santa Monica, Cal., for plaintiffs.

E. Michael Kaiser, Chase, Rotchford, Drukker & Bogust, Gerald D. Shoaf, Redwine & Sherrill, Riverside, Cal., for defendant Coachella Valley County Water Dist.

## OPINION

SOLOMON, Senior District Judge.

On September 10, 1976, record rains accompanying Hurricane Kathleen broke through flood control facilities and inundated parts of the City of Palm Desert, California (the City). Property owners whose lands were damaged (plaintiffs) brought these nearly identical actions against the defendant Coachella Valley County Water District (Water District) for just compensation under the Fifth and Fourteenth Amendments.[1] Plaintiffs assert that the Water District was negligent in the construction and maintenance of its sand dikes and that the flood damage caused by the negligence was a compensable taking.

The plaintiffs' properties are located in the portion of Coachella Valley which is an alluvial fan formed by runoff from Dead Indian Canyon, a natural drainage channel for water flowing from the San Jacinto Mountains south of the City. As the water from Dead Indian Canyon flows under State Highway 74, it meets the water from Carrizo Creek, and the waters merge to form a single stream.

Between 1939 and 1949, a channel and a sand levee were built to keep the single stream in a natural flood channel to the east of the City. It is not known who built them, and they are outside the Water District's boundaries and jurisdiction. The State of California Department of Transportation (Caltrans) built some levees near State Highway 74 to control those waters. In 1955 and 1956, the Water District built a sand dike south of the City as the last of the flood control measures.

During the hurricane, the floodwaters overwhelmed all the structures and flooded the plaintiffs' properties. The plaintiffs assert that the Water District's sand dike failed because: (1) it was not large enough; (2) it was made of sand and therefore easily eroded; and (3) it did not contain "rip-rap", a hard surface which would have made the dike more durable. The plaintiffs assert that the Water District knew of these inadequacies and negligently failed to take corrective action.

The Water District filed a motion to dismiss, asserting: (1) the court does not have

---

1. In five of the actions, plaintiffs assert jurisdiction solely under 28 U.S.C. § 1332 (federal question jurisdiction). In two of the actions, plaintiffs assert not only federal question jurisdiction but also jurisdiction under 28 U.S.C. § 1331 (diversity jurisdiction) and § 1343 (civil rights jurisdiction). In the remaining action, plaintiffs assert jurisdiction under 28 U.S.C. § 1331 and § 1343.

jurisdiction because of a lack of a federal question; (2) plaintiffs have failed to exhaust their state administrative remedies; (3) the court should decline to hear the case under the abstention doctrine; (4) plaintiffs failed to join the State of California, which is an indispensable party; and (5) plaintiffs have failed to state a claim upon which relief can be granted.

A hearing was held on the motion, primarily to determine whether there was substantial evidence of a recurrent, intermittent flooding danger created by the Water District.[2] At the hearing, plaintiffs' expert testified that the Water District's sand dike diverted some of the water from Dead Indian Canyon and Carrizo Creek, but that the rest of the water broke through and followed the route it would have followed even if the dike had not been built. He also testified that the dike was too small and that it should have had "rip-rap", but he admitted that it was unlikely that the sand dike was intended to protect the City against waters from Dead Indian Canyon and Carrizo Creek. To protect the City would have required turning the water 90 degrees which, he testified, would have been an extremely difficult task. His testimony was consistent with the testimony of the Water District's expert that the primary purpose of the sand dike was to protect the City against runoff from No Name Creek, which is north of Dead Indian Canyon.

Plaintiffs' expert testified that the capacity of the channel was sufficient to handle flows that would occur every 30 years on the average and that a flood of the severity of the September 10, 1976, flood would occur every 50 years on the average. He also testified that the dike and the levee have been rebuilt and have the same capacity as their predecessors.

The Water District's expert testified that the channel's capacity was ample to handle floods that would occur every 100 years on the average and that the September 10, 1976, flood was of a magnitude that would recur four or five times every thousand years. He also testified that the old sand dike did have some "rip-rap" and that the reconstructed facilities would be able to handle a flood as large as the September 10, 1976, flood.[3]

The parties stipulated that the Water District had represented to the Riverside County East Area Planning Council that the City was safe from floods except in rare circumstances.

### The Actions in Which There Is No Diversity

Plaintiffs allege that this court has jurisdiction because the Water District's negligent construction and maintenance of its flood control structures resulted in damage that constituted a taking requiring compensation under the Fifth and Fourteenth Amendments. Ordinarily, for purposes of a motion to dismiss, it is assumed that the allegations in the complaint are true. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corporation*, 382 U.S. 172, 174–175, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), and ordinarily, if the complaint alleges that a governmental body has deprived a citizen of a right secured by the Constitution, the court will assume jurisdiction under 28 U.S.C. § 1331. *Mosher v. City of Phoenix*, 287 U.S. 29, 32, 53 S.Ct. 67, 77 L.Ed. 148 (1932).

Nevertheless, a court lacks jurisdiction if the claims in the complaint are so attenuated and unsubstantial that they are absolutely devoid of merit or if the unsoundness of the claim is so apparent from previous decisions that the subject is fore-

---

2. The hearing was held before The Honorable Warren J. Ferguson on May 17 and 18, 1977. Not all the parties were present, but all have stipulated that they will be bound by the evidence adduced at that time and by my determination of the issues based on the pleadings and, if necessary, the evidence produced at the hearing.

3. The Water District's expert testified that the rainfall that produced the flood totaled 5.29 inches in 16 hours. Plaintiffs' expert, who had checked rainfall records back to 1939, admitted that he found no instances in which rainfall exceeded five inches in a 24-hour period.

closed. *Hagans v. Lavine*, 415 U.S. 528, 536–537, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

In their complaints, plaintiffs assert that their land was in a flood plain and that the sand dike was intended to protect their land from flooding. Previous decisions foreclose relief under the Fifth Amendment in such circumstances.

In *United States v. Sponenbarger*, 308 U.S. 256, 60 S.Ct. 225, 84 L.Ed. 230 (1939), the Supreme Court held that when the government attempts to protect an area from an existing flood hazard, landowners whom the attempt fails to or cannot protect are not entitled to compensation under the Fifth Amendment. To hold otherwise would "far exceed even the 'extremest' conception of a 'taking' by flooding within the meaning of [the Fifth] Amendment." *Id.* at 265, 60 S.Ct. at 228.

In *B Amusement Company v. United States*, 180 F.Supp. 386, 148 Ct.Cl. 337 (1960), the court held that there was no taking when the government by its action intended to protect—not to take—property, and when the natural and probable consequences of the government's acts would not result in a taking.

As an alternative ground, plaintiffs contend that negligence is a proper basis for claiming a taking. But as the court in *Columbia Basin Orchard v. United States*, 132 F.Supp. 707, 132 Ct.Cl. 445 (1955), so aptly stated:

" . . . [I]n no case has the Supreme Court ever indicated that an accidental or negligent impairment of the value of property constitutes a taking. They have never departed from the rule that there must have been an intent on the part of the Government to appropriate the property to the use of the public, or to deprive the owner of the beneficial use of it for the benefit of the public. An accidental or negligent impairment of the value of property is not a taking, but, at most, a tort . . . ." 132 F.Supp. at 710.

*Barnes v. United States*, 538 F.2d 865 (Ct.Cl.1976), a case on which plaintiffs rely, does not set out a contrary rule. In *Barnes*, backwater, created by a dam built to control the flow of a river, subjected to flooding land which previously was not subject to flooding. The court there said that even though it is unintended, flooding which will be intermittent and which will be inevitable and frequently recur as the natural and probable consequence of construction of a dam, constitutes a taking.

Here, unlike *Barnes*, the construction of the sand dike was intended to protect lands from flooding rather than control the flow of a river. And the natural and probable consequence of the construction of the sand dike was to protect against rather than to cause flooding.

Even if this type of construction could result in a taking, plaintiffs would have to prove that the sand dike increased the amount of flooding to which the land was subjected. *Sanguinetti v. United States*, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608 (1924); *Fromme v. United States*, 412 F.2d 1192 (Ct.Cl.1969). Here, plaintiffs' own expert testified that the sand dike diverted some of the water and that the channel was capable of containing floods that would occur every 30 years on the average. Therefore the dike and sand channel reduced rather than increased the amount of flooding to which the land would have been subject if no flood control measures had been taken.

■ I hold in those actions not based on diversity that this court lacks jurisdiction.

■ These actions must also be dismissed for failure to state a claim upon which relief can be granted.

To obtain relief, plaintiffs must prove that their property is subject to permanent, intermittent and frequent flooding that produces substantial damage and is due to authorized government action. They failed to do this.

■ Most of the arguments which require dismissal on this ground have been covered earlier on the jurisdictional issue. I shall not repeat them. I merely state that when the government undertakes to protect

land from flooding, that type of authorized government activity cannot result in a taking. *United States v. Sponenbargers, supra; B Amusement Company v. United States, supra.* In addition, negligence cannot be the basis of a taking. *Columbia Basin Orchard v. United States, supra.*

The other contentions of the parties to support or deny jurisdiction have no merit.

Based on the pleadings alone, I have concluded that these actions must be dismissed. My conclusions are reenforced when I consider the testimony and other evidence adduced at the hearing before Judge Ferguson.

In most respects the testimony of plaintiffs' expert does not conflict with the testimony of the Water District's expert. There is a conflict on the magnitude of Hurricane Kathleen.

I find that Hurricane Kathleen was a storm of a 200 to 250 year magnitude—that is, one that occurs four or five times in 1,000 years.

This opinion is limited to the issue of jurisdiction. It is not intended to be a determination on the merits.

*The Actions in Which There Is Diversity*

In two actions [4] plaintiffs proceed on a taking theory under the Fifth and Fourteenth Amendments. They also allege jurisdiction based on diversity. A court must therefore consider any legal theory under which the plaintiffs may prevail on the facts asserted in the pleadings. *United States v. Howell,* 318 F.2d 162, 166 (9th Cir. 1963). Plaintiffs may be able to assert a claim on the theory of negligence.[5] Counsel should submit briefs on this issue, including the applicability of the California Tort Claims Act.[6]

The Water District's motion to dismiss is granted for the actions in which there is no diversity. I do not pass on the motion to dismiss in the two cases based on diversity.

---

4. *Ives v. Coachella Valley County Water District,* CV 77–323; *Sphere Insurance Company v. Coachella Valley County Water District,* CV 77–2782.

5. Plaintiffs appear to contend that the Water District misrepresented the protection the sand dike provided. The Water District may not be liable for misrepresentation. Cal.Govt.Code § 818.8.

6. I have refrained from deciding at this time whether the Water District or Caltrans was guilty of negligence because there are many other cases, particularly those in which property owners have sued their insurers in which negligence is directly involved and in which the parties have not had the opportunity to fully present either their evidence or their arguments.