SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff,

v.

William GUYTON et al., Defendants.

STATE FARM FIRE & CASUALTY COMPANY, Plaintiff,

v.

David DeLANCY et al., Defendants.

GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION et al., Plaintiffs,

v.

Vernton M. BARTON et al., Defendants.

AETNA CASUALTY & SURETY COMPANY, Plaintiff,

v.

Harry R. NUDD et al., Defendants.

SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff,

v.

Michael PURPURA et al., Defendants, and Other Consolidated Cases as Listed by Number.

Nos. CV 76–3488, CV 77–383, CV 77–384, CV 77–680, CV 77–956, CV 77–2757, CV 77–2758, CV 77–2759, CV 77–2761, CV 77–2762, CV 77–2763, CV 77–2775, CV 77–3372, CV 77–3373, CV 77–3390 and CV 77–3780.

United States District Court, C. D. California.

March 21, 1979.

Gerald M. Lachowicz, Irene M. Boyd and Jeffrey H. Leo of Long & Levit, Los Angeles, Cal., for plaintiff.

Jerrold A. Fadem and Richard D. Norton of Fadem, Berger, McIntire & Norton, Santa Monica, Cal., David P. DeLancy, Corona del Mar, Cal., Gerald D. Shoaf of Redwine & Sherrill, Riverside, Cal., Frederick V. Geisler of Iverson, Yoakum, Papiano & Hatch, Los Angeles, Cal., and William A. Francis of Irsfeld, Irsfeld & Younger, Hollywood, Cal., for defendants.

## OPINION

SOLOMON, Judge:

Plaintiffs insurance companies filed these actions to obtain judgments declaring that the insurance policies which they issued excluded flood damage and therefore do not cover the losses to real and personal property which the policyholders sustained as a result of a flood which occurred on September 10, 1976, in Palm Desert, California.

The defendant insureds, in their answers, assert that the losses were proximately caused by the negligence of third parties and are therefore covered by the policies. They also demand damages, including punitive damages, because the insurance companies failed to pay these losses.

The cases were consolidated for trial and were tried before me, without a jury, on the segregated issue of coverage.

It was agreed that I would not decide whether there was third party negligence or whether that negligence, if any, was a proximate cause of the loss; I was merely to decide if in these cases the policies insured against damage which was a proximate result of third party negligence; and, if so, the cases would then be submitted to one or more juries on the issues of proximate cause and damages.

If, however, I find that under the facts of these cases, the exclusions in the policies, particularly the flood damage exclusion, prevented the insureds from recovering, even if there was third party negligence which was a proximate cause of the loss, then I would enter judgments in favor of plaintiff insurance companies.

These cases were submitted on the pleadings, witness statements, exhibits, deposi-

tions and testimony taken before Judge Warren Ferguson in the case of *PDTC Owners Association, et al. v. Coachella Valley County Water District*, 443 F.Supp. 338, which was consolidated with a group of other cases.

On September 10, 1976, record rains accompanying Hurricane Kathleen broke through flood control facilities and inundated parts of the City of Palm Desert, California.

"Tropical Cyclone Kathleen moved through the western United States on September 10–12, 1976. The storm caused 5 deaths in the United States, more than 150 million dollars in damage, localized rain amounts of greater than 10 inches, and winds in excess of 50 knots. It was the first major tropical cyclone to hit the western United States since 1939." NOAA Technical Memorandum NWS WR–114, National Oceanic and Atmospheric Administration, National Weather Service, at 1–2.

The U. S. Geological survey reports:

"Many of the entries represent the greatest discharges of the past decade or longer and, in some cases, the highest on record."

"PEAK DISCHARGES, FLOODS OF SEPTEMBER
1976, SOUTHERN CALIFORNIA

| Source | Number or Letter | Stream and location | Drainage area Sq. Mi. | Date Sept. 1976 | Peak Discharge C.F.S. |
|---|---|---|---|---|---|
| Misc (6) | | Carrizo Creek nr Palm Desert 33° 39′ 41″, 116° 24′ 10″ | 5.00 | 10 | 2,820 |
| Misc (7) | | Dead Indian Creek nr Palm Desert 33° 40′ 07″ 116° 25′ 10″ | 9.02 | 10 | 8,900" |

(*Floods of September 1976*, U. S. Army Corps of Engineers, Los Angeles District, September 1977, at 3 and 7.)

The insureds' properties are located in the portion of Coachella Valley which is an alluvial fan formed by runoff from Dead Indian Canyon, a natural drainage channel for water flowing from the San Jacinto Mountains south of the City. As the water from Dead Indian Canyon flows under State Highway 74, it meets the water from Carrizo Creek, and the waters merge to form a single stream.

Between 1939 and 1949, a channel and a sand levee were built to keep the single stream in a natural flood channel to the east of the City. It is not known who built them, and they are outside the Water District's boundaries and jurisdiction. The State of California Department of Transportation (Caltrans) built some levees near State Highway 74 to control those waters. In 1955 and 1956, the Water District built a sand dike south of the City as the last of the flood control measures.

During the hurricane, the floodwaters overwhelmed all the structures and flooded the insureds' properties.[1]

Each policy was known as All Risk-Home Owner's Policy. Nevertheless each policy contained a number of exclusions, such as exclusions for war and nuclear reaction, radiation and contamination. It also contained deductible provisions and additional exclusions relating to specific coverages.

1. Taken from my Opinion in *PDTC Owners Association, et al., v. Coachella Valley County Water District, et al.*, 443 F.Supp. 338 (C.D. Cal.), and Other Consolidated Cases, except that "insureds" is substituted for "plaintiffs".

The exclusions relevant to these cases are set forth in "ADDITIONAL EXCLUSIONS," which provides in pertinent part:

"THIS POLICY DOES NOT INSURE AGAINST LOSS:

. . .. . .

1. CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY ANY OF THE FOLLOWING:

a. FLOOD, SURFACE WATER, WAVES, TIDAL–WATER OR TIDAL WAVE, OVERFLOW OF STREAMS OR OTHER BODIES OF WATER, OR SPRAY FROM ANY OF THE FOREGOING, ALL WHETHER DRIVEN BY WIND OR NOT;

. . . . .

2. CAUSED BY, RESULTING FROM, CONTRIBUTED TO OR AGGRAVATED BY ANY EARTH MOVEMENT, INCLUDING BUT NOT LIMITED TO EARTHQUAKE, VOLCANIC ERUPTION, LANDSLIDE, MUDFLOW, EARTH SINKING, RISING OR SHIFTING; . . .."

All parties agree that the insurance companies issued "all risk" homeowners' policies, that each of these policies contained an express "flood exclusion" and that the September 10, 1976 flood was a giant flood.

They also agree that the language of the exclusionary clauses is clear and unambiguous.

Nevertheless, the insureds contend that the losses which they sustained in this flood were not excluded but were covered by the policies.

They assert that the policies are ambiguous because they are called "all risk" policies and yet they have exclusions.

The insureds also assert that the companies that issued the policies and the people who purchased the policies intended that flood damage would entitle insureds to recover unless the flood damage was the sole cause of the loss.

There is no merit to any of these contentions.

■ All policies, including policies labeled all risk, have exclusions. The only limitation is that they must be clear and explicit and must not be illegal or absurd. *Continental Casualty Co. v. Phoenix Construction Co.*, 46 Cal.2d 423, 296 P.2d 801 (1956).

This is the rule laid down in section 1638 of the California Civil Code relating to the interpretation of contracts, and the same rules apply to policies of insurance.

In fact, in *Jarrett v. Allstate*, 209 Cal. App.2d 804, 26 Cal.Rptr. 231 (1962), the court set out in detail the rules by which insurance contracts are to be interpreted in the State of California:

"Certain fundamental rules have been evolved with reference to the interpretation of insurance contracts. Thus it is a well-established principle that each clause of an insurance contract must be considered with reference to every other clause on which it has any bearing and all of the provisions are to be construed together for the purpose of ascertaining the intent of the parties. [Citations.] The primary object is to ascertain and carry out the intention of the parties. [Citations.] In construing insurance contracts, the standard to be used is the understanding of the ordinary person. [Citations.] If any ambiguity or uncertainty exists an insurance policy is construed strictly against the insurer and most liberally in favor of the insured. [Citations.] Where a policy provision is susceptible of two constructions, the one more favorable to the policyholder should be adopted. [Citations.] The rule of strict construction against the insurer and liberal construction in favor of the insured is particularly applicable where the policy provides for exceptions to or exclusions from the general import of the principal coverage clauses. The burden rests on the insurer to phrase such exceptions and exclusions in clear and unmistakable language. [Citations.] This rule requiring all uncertainties, ambiguities, inconsistencies and doubtful provisions to be resolved against the insurer and in favor of the insured is subject to the

important limitation, however, that it is applicable only when the policy actually presents such uncertainty, ambiguity, inconsistency or doubt. In the absence thereof, the courts have no alternative but to give effect to the contract of insurance as executed by the parties. *Accordingly, when the terms of the policy are plain and explicit the courts will not indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed.* [Citations.]" 26 Cal.Rptr. at 234. (Emphasis added.)

There is also no merit in the insureds' contention that policyholders and insurance companies generally believe that floods are covered. I do not believe that they do. But even if they did, the express language of the policies, written in clear, concise and simple language, excludes floods from covered risks.

People who read their policies know of these exclusions; and others, particularly in flood-prone areas, are probably acquainted with the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001, et seq., which was enacted to fill the void of no insurance for flood victims.

The insurance companies here argue that floods are not the kind of risks which insurance companies undertake because they are usually catastrophic and affect many people. A clear statement of their position was made by another insurance company. Its statement was referred to by the court in *Wyatt v. Northwestern Mutual Ins. Co.*, 304 F.Supp. 781, 783 (D.Minn. 1969):

"Plaintiffs assert that the reason for the insertion of the exclusionary clause above quoted in all risk insurance policies is to relieve the insurer from occasional major disasters which are almost impossible to predict and thus to insure against. There are earthquakes or floods which cause a major catastrophe and wreak damage to everyone in a large area rather than one individual policyholder. When such happens, the very basis upon which insurance companies operate is said to be destroyed. When damage is so widespread no longer can insurance companies spread the risk and offset a few of the average percentage of losses by many premiums. Looking at the special exclusionary clause in the policy here in question, it seems to cover situations where one single event could adversely affect a large number of policyholders. Besides the particular clause which is before this court the insurer also excludes floods, tidal waves, a back up of water below the surface, changes in temperature and changes in the law. All these are phenomena likely to affect great numbers of people when they occur."

Finally, the insureds contend that California law requires that the flood exclusion is operative only when the flood is the sole and proximate cause of the loss. In support of this contention they rely on *Sabella v. Wisler*, 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889 (1963); *Sauer v. General Insurance Co.*, 225 Cal.App.2d 275, 37 Cal.Rptr. 303 (1964); and *Gillis v. Sun Insurance Office*, 238 Cal.App.2d 408, 47 Cal.Rptr. 868 (1965).

In *Sabella*, a contractor built a house on fill which was not properly compacted. He sold the house to the Sabellas who insured it under an "all physical loss" policy. The policy excluded coverage for " 'loss by settling, cracking, shrinkage . . .' " After the policy was issued, a sewer pipe leading from the house started to leak. The leak was caused either by the settling of the fill or by an improper joint in the pipe or both. The leaking water caused the earth to compact and subside faster than it otherwise would have.

The California Supreme Court held that rupture of the sewer line, attributable to the negligence of a third party, was the "efficient proximate cause" of the loss, not the settling. The court recognized that the policy excluded all loss by settling, whether gradual or rapid and that settling did occur. But the court, in finding that the policy covered the loss, stated:

" '[I]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause—the one that sets others in

motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster.' The virtual absence of subsidence damage in the prior four years of the existence of the house here in question clearly indicates that the broken pipe was the predominating or moving efficient cause of the loss." *Sabella, supra,* 27 Cal.Rptr. at 695, 377 P.2d at 895.

In *Sauer*, a water pipe under the plaintiff's house leaked and caused the earth to sink. The settling damaged the house. The policy insured against " 'all direct loss to the property caused by: . . . 15. Accidental discharge, leakage or overflow of water or steam from . . . a plumbing . . . system.' " The policy excluded coverage for " 'loss caused by, resulting from, contributed to, or aggravated by any earth movement, including but not limited to earthquake, landslide, mudflow, earth sinking . . . [or] [w]ater below the surface of the ground.' " The policy also excluded " 'loss by settling, cracking, bulging, shrinkage or expansion of walls, floors, ceilings, roofs, foundations . . .' "

Following *Sabella*, the court held that the loss was covered by the policy. The court found that accidental leakage and discharge of water into the ground from the plumbing system was the "efficient proximate cause" of the loss rather than settling or sinking.

In *Gillis*, plaintiff filed the action against the insurance company for damage to his dock. During a windstorm, the gangway to plaintiff's dock was sheared off and fell violently on the dock causing the dock to partially sink. The sinking of the dock allowed the natural action of the waves to eventually break up and totally submerge the dock.

The policy insured the dock against " 'loss or damage caused by wind.' " It excluded coverage for " 'loss caused by, resulting from, contributed to or aggravated by . . Flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not.' "

The plaintiff asserted that the wind was the proximate cause of the damage to the dock and relied on *Sabella*. The insurance company asserted that the intent in the policy was that there was no coverage if an excluded cause had any part, no matter how small, in causing the damage.

The court rejected this argument. It found that the wind started the chain of events which permitted the waves to damage the dock. The wind was the "dominant or efficient" cause. The court distinguished two situations which it specifically left open for future consideration: the effect of the exclusion clause (1) when the action of the excluded peril precedes the action of the insured peril, and (2) when excluded and included causes operate jointly and simultaneously.

In all of these cases the covered risk was either the sole or the efficient proximate cause of the loss to one structure and the covered risk preceded the excluded risk, which merely aggravated the covered risk. Here, the excluded risk was a massive and destructive flood which covered hundreds of square miles, destroyed property worth more than a hundred million dollars, and killed people. The flood preceded any negligence which the insureds charge caused the condition which damaged them.

■ In my view, floods are the kinds of disasters which insurance companies do not normally insure against and which they have a right to exclude from coverage. And coverage for floods is not the kind of insurance protection that property owners believe they are getting when they buy "all risk" policies without specific endorsements covering these risks.

■ The insurance companies here excluded, in clear and unmistakable language, floods and all losses caused by, resulting from, contributed to or aggravated by floods. California law does not require that under these circumstances insurance companies be held liable for losses caused in whole

or in part by widespread and massive flood damage.

Plaintiff insurance companies are entitled to a declaration of non-liability. The defendants' counterclaims are dismissed.

This opinion shall constitute findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a).