[S.F. No. 25060. Mar. 30, 1989.]

JACK I. GARVEY et al., Plaintiffs and Respondents, v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant
and Appellant.

## COUNSEL

Rogers, Joseph, O'Donnell & Quinn, Joseph W. Rogers, Jr., Susan M. Popik and Leo F. Orenstein for Defendant and Appellant.

Horvitz, Levy & Amerian, Ellis J. Horvitz, Stuart B. Esner, Michael R. Tyler, LeBoeuf, Lamb, Leiby & MacRae, John R. Maloney, Donald J. Greene and Ellen August as Amici Curiae on behalf of Defendant and Appellant.

Bianco, Brandi, Jones & Rudy, Bianco, Brandi, Jones, Shane & Rudy, Feeney, Sparks & Rudy, David W. Rudy, Thomas E. Feeney, Joel P. Gumbiner and Terry Senne for Plaintiffs and Respondents.

Fadem, Berger & Norton, Michael M. Berger, Harry V. Lehmann, Hal Chase, Jr., Roland Berard, James P. Nevin, Browne Greene, Charles O'Reilly, Leonard Sachs, Robert Steinberg, Douglas DeVries, James R. McGrath, Harvey R. Levine, Sanford Gage, Don Caffray and Ian Herzog as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**LUCAS, C. J.**—We granted review to consider the Court of Appeal's reversal of a directed verdict of coverage in favor of Jack and Rita Garvey (hereafter plaintiffs). We sought to resolve some of the confusion that has arisen regarding insurance coverage under the "all risk" section of a homeowner's insurance policy when loss to an insured's property can be attributed to two causes, one of which is a nonexcluded peril, and the other an excluded peril.

In recent years, some courts have misinterpreted and misapplied our decisions in *Sabella* v. *Wisler* (1963) 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889], and *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123]. In so doing, they have allowed coverage in first party property damage cases under our holding in *Partridge* by inappropriately using the *Partridge* concurrent causation approach

as an alternative to *Sabella*'s efficient proximate cause analysis.[1] ██ 

██ ██ This extension of the analysis in *Partridge,* a third party *liability* case, allows coverage under a first party *property* insurance policy whenever a covered peril is a concurrent proximate cause of the loss, without regard to the application of specific policy exclusion clauses.[2] Such reasoning ignores the criteria set forth in Insurance Code sections 530 and 532,[3] the relevant analysis in *Sabella* and the important distinction between property loss coverage under a first party property policy and tort liability coverage under a third party liability insurance policy. Indeed, because a covered peril usually can be asserted to exist somewhere in the chain of causation in cases involving multiple causes, applying the *Partridge* approach to coverage in first party cases effectively nullifies policy exclusions in "all risk" homeowner's property loss policies, thereby essentially abrogating the limiting terms of insurance contracts in such cases. We cannot believe *Partridge* intended such a sweeping result in first party property loss cases. To the contrary, as we explain below, we must put *Partridge* in its proper perspective, i.e., that decision should be utilized only in *liability* cases in which true concurrent causes, each originating from an independent act of negligence, simultaneously join together to produce injury. Therefore, as will appear, we conclude this case should be remanded to the Court of Appeal with directions to remand to the trial court for a jury determination of causation pursuant to *Sabella, supra,* 59 Cal.2d 21.

I.

FACTS

Plaintiffs bought their house in the mid-1970's. In 1977, plaintiffs purchased from State Farm Fire and Casualty Company (hereafter defendant) an "all risk" homeowner's policy of insurance which was in effect at all times relevant. Section I of the policy in question provided coverage for "all risks of physical loss to the property covered" except as otherwise excluded or limited. Losses excluded by this portion of the policy included those "caused by, resulting from, contributed to or aggravated by any earth movement, including but not limited to earthquake, volcanic eruption, landslide, mudflow, earth sinking, rising or shifting," and losses caused

---

[1] E.g., *Farmers Ins. Exchange* v. *Adams* (1985) 170 Cal.App.3d 712, 722 [216 Cal.Rptr. 287] (dicta); *Premier Ins. Co.* v. *Welch* (1983) 140 Cal.App.3d 720, 728 [189 Cal.Rptr. 657]; *Safeco Ins. Co. of America* v. *Guyton* (9th Cir. 1982) 692 F.2d 551, 554-555.

[2] As we explain in greater detail below, the distinction between first and third party claims can be summarized as follows: If the insured is seeking coverage against *loss or damage sustained by the insured,* the claim is first party in nature. If the insured is seeking coverage against *liability of the insured to another,* the claim is third party in nature. The present case is a first party property loss case.

[3] All further statutory references are to the Insurance Code unless otherwise indicated.

"by . . . settling, cracking, shrinkage, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings. . . ."

In August 1978, plaintiffs noticed that a house addition, built in the early 1960's, had begun to pull away from the main structure. They also discovered damage to a deck and garden wall. There ensued numerous phone calls, letters, meetings and investigations as plaintiffs tried to determine from defendant whether the damage was covered by their homeowner's property insurance policy.

In October 1979, after receiving from its counsel an opinion that the loss was not covered, defendant notified plaintiffs by letter that the "policy excludes coverage for the loss herein. Normally, such a denial of coverage would leave you to your remedies. [¶] However, because the company wishes to resolve the coverage issue in an atmosphere free from extraneous matters such as bad-faith and class action issues, the company is prepared to advance you the claimed sum of $11,550 subject to a reservation of rights as authorized by Johansen v. CSAA, 15 Cal.3d 9. . . ." Under the agreement proposed, defendant would make the advance and file a declaratory relief action on the issue of coverage; plaintiffs would pay back the advance if the court ruled in defendant's favor, would waive "any claim of consequential or punitive damages arising out of any allegation of bad-faith, mental distress, oppression, fraud or insurance-related tort," and would not "institute any class-action against defendant on account of the facts and issues involved in this loss and claim."

After refusing to sign the foregoing agreement, plaintiffs sued, claiming that although their policy excluded coverage for losses caused or aggravated by earth movement, it implicitly provided coverage for losses caused by contractor negligence because negligence was not a specifically excluded peril under the policy. Plaintiffs also argued that defendant denied their claim before adequately investigating the damage to the structure, and that subsequent investigations were undertaken merely to confirm the original denial. In addition, plaintiffs asserted, defendant's denial of coverage constituted a breach of the implied covenant of good faith and fair dealing and violated various provisions of the Insurance Code. Plaintiffs sought as relief (i) policy benefits, (ii) general damages for economic detriment and emotional distress, and (iii) punitive damages.

Defendant rested on the 12th day of trial, and the court granted a directed verdict for plaintiffs on the coverage issue. The court informed the parties it was following the decisions in *Partridge, supra,* 10 Cal.3d 94, and *Sabella, supra,* 59 Cal.2d 21, and that plaintiffs were covered under the policy because negligent construction, a covered risk, was a concurrent

proximate cause of the damage. Specifically, the trial court stated: "[The Supreme Court] told me in *Sabella* that negligent construction can be a proximate cause. They told me in *Partridge* there may be coverage whenever an insured risk constitutes simply a concurrent proximate cause of the injuries. [¶] Now, to me that is crystal clear, putting those two causes together, that if negligent construction is a concurrent proximate cause of the loss, there is coverage." The court continued, "The key witness for the defense, Mr. Nelson, conceded in his testimony, as I heard it and understood it, that the negligent construction was a cause of the room falling away. He did not use the word 'proximate.' He said a causative factor at one time. I don't recall the exact language when he answered a question. In substance, that it was a cause on another occasion. As a matter of law, based upon the evidence, it was a proximate cause."

The jury subsequently found defendant liable for $47,000 in policy benefits and general damages, and $1 million in punitive damages. The court denied defendant's motions for judgment notwithstanding the verdict and for a new trial, and declined to issue a remittitur with respect to the punitive damages award. The court entered judgment in accordance with the verdict. Defendant appealed, and the Court of Appeal reversed the judgment in a divided opinion. Before reviewing the Court of Appeal holding, and in order to provide sufficient background information that will aid in the understanding of this case, we first discuss the development of multiple and concurrent causation insurance analyses, and the important distinction between property and liability policies.

## II.

## Discussion

### A. *Development of Multiple Causation Insurance Coverage Analyses*

#### 1. *The efficient proximate cause standard*

Our courts have long struggled to enunciate principles that determine whether coverage exists when excluded and covered perils interact to cause a loss. Initially, the courts attempted to reconcile section 530 (which provides for coverage when a peril insured against was the "proximate cause" of loss) with section 532 (which provides, that "If a peril is specifically excepted in a contract of insurance, and there is a loss which would not have occurred but for such peril, such loss is thereby excepted [from coverage] even though the immediate cause of the loss was a peril which was not excepted").

In our 1963 *Sabella* decision, *supra,* 59 Cal.2d 21, we faced a difficult property loss coverage question arising after a building contractor constructed a house on uncompacted fill and negligently installed a sewer line; negligent installation was a covered peril. Eventually, the sewer line ruptured causing water to saturate the ground surrounding the insureds' house, resulting in subsidence, an excluded peril. The insureds brought a first party action against their insurer, seeking recovery for property loss under their homeowner's property policy. (*Id.,* at p. 26.)[4] The trial court found the loss was not covered because subsidence was a specifically excluded peril under the policy. The insureds appealed this ruling and we reversed.

■ On its face, section 532 would have precluded coverage because the loss would not have occurred "but for" the excluded peril of subsidence. We recognized, however, that such a result would be absurd because it would deny coverage even though an insured peril "proximately" caused the loss simply because a subsequent, excepted peril was also part of the chain of causation. We reasoned that sections 530 and 532 were not intended to deny coverage for losses whenever "an excepted peril operated to any extent in the chain of causation so that the resulting harm would not have occurred 'but for' the excepted peril's operation . . . ." (*Sabella, supra,* 59 Cal.2d at p. 33.) Rather, we explained that when section 532 is read along with section 530, the "but for" clause of section 532 necessarily refers to a "proximate cause" of the loss, and the "immediate cause" refers to the cause most immediate in time to the damage. (*Id.,* at pp. 33-34.)

Thus, *Sabella* held that: " '[I]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster.' " (59 Cal.2d at pp. 31-32, quoting from Couch on Insurance (1930) § 1466; Houser & Kent, *Concurrent Causation in First-Party Insurance Claims: Consumers Cannot Afford Concurrent Causation* (1986) Tort & Ins. L.J. 573, 575.)

Furthermore, in characterizing the "but for" clause of section 532 as referring to the efficient proximate cause of the loss, we impliedly recognized that coverage would not exist if the covered risk was simply a *remote*

---

[4]*Sabella* explained that in 1957 the insureds purchased a fire insurance policy with an "All Physical Loss" building indorsement. The insurer "thereby agreed to insure the house 'against all risks of physical loss except as hereinafter excluded.' Under the subdivision 'Exclusions,' it was stated: 'This endorsement does not insure against *loss . . . by* termites or other insects; wear and tear; deterioration; smog; smoke from agricultural smudging or industrial operations; rust; wet or dry rot; mould; mechanical breakdown; *settling, cracking, shrinkage, or expansion of pavements, foundations, walls, floors, or ceilings; unless loss by . . . collapse of buildings ensues . . . .'* (Italics added.)" (*Sabella, supra,* 59 Cal.2d at p. 26.)

cause of the loss, or if an excluded risk was the efficient proximate (meaning predominant) cause of the loss. On the other hand, the fact that an excluded risk contributed to the loss would not preclude coverage if such a risk was a remote cause of the loss.[5]

We relied heavily in *Sabella, supra,* 59 Cal.2d 21, on our earlier decision in *Brooks* v. *Metropolitan Life Ins. Co.* (1945) 27 Cal.2d 305 [163 P.2d 689], in which recovery was allowed on a homeowner's policy insuring against death by accidental means. In *Brooks,* the insured, who was suffering from incurable cancer, an excluded peril, died in a fire. We held, "recovery may be had even though a diseased or infirm condition appears to actually contribute to cause the death if the accident sets in progress the chain of events leading directly to death, or if it is the prime or moving cause." (*Id.,* at pp. 309-310.) *Brooks* thus defined efficient proximate cause in the first party loss context as the "prime or moving cause." (*Ibid.*)

■ The Court of Appeal here replaced the *Sabella* term "efficient proximate cause" with the term "moving cause." *Sabella* defined "efficient proximate cause" alternatively as the "one that sets others in motion" (59 Cal.2d at p. 31), and as "the predominating or moving efficient cause." (*Id.,* at p. 32.) We use the term "efficient proximate cause" (meaning predominating cause) when referring to the *Sabella* analysis because we believe the phrase "moving cause" can be misconstrued to deny coverage erroneously, particularly when it is understood literally to mean the "triggering" cause. Indeed, we believe misinterpretation of the *Sabella* definition of "efficient proximate

---

[5] Contrary to Justice Broussard's dissent, *Sabella, supra,* 59 Cal.2d 21, 23, did not "merely point[ ] out that when the efficient cause is the excluded cause and the immediate cause is the insured cause the case is governed by Insurance Code section 532." (Dis. opn. of Broussard, J. at p. 432.) This statement ignores *Sabella*'s analysis and its reconciliation of sections 530 and 532 in conformance with the reasonable expectations of insureds. (*Sabella, supra,* 59 Cal.3d at pp. 31-32.)

Moreover, we do not overrule *Pacific etc. Co.* v. *Williamsburgh City Fire Ins. Co.* (1910) 158 Cal. 367 [111 P. 4] (see dis. opn. of Broussard, J. at p. 432; rather, we recognize that the type of policy and exclusions discussed in *Williamsburgh* bear little relationship to the issues discussed above. *Williamsburgh* simply allowed the insured to recover damages for a fire "the remote cause of which was an earthquake" "on the peculiar phraseology of [a] particular policy, which made a distinction between loss caused '*directly or indirectly*' by certain means other than earthquake and 'loss or damage occasioned by or through' earthquake." (*Williamsburgh, supra,* 158 Cal. at p. 376.) In sum, although, like *Sabella,* we approve of the fundamental principles of insurance law discussed in *Williamsburgh,* we recognize that it would be unrealistic to discuss at length a case analyzing property policy language that is now obsolete.

Finally, Justice Broussard's statement that "under the majority's rules, an exclusion for loss by falling trees will mean that the fire policy will provide coverage when the house is crushed but not when it burns" (dis. opn. by Broussard, J. at p. 436) ignores modern homeowners policy language which addresses fire loss specifically. For example, a direct loss to property by fire resulting from earth movement is typically covered. (See 2 Cal. Insurance Law and Practice (1987 ed.) § 36 et seq., Appens. A-F, ISO Homeowners Standard Form Policies, at pp. 70-159.)

cause" has added to the confusion in the courts and, in part, is responsible for the erroneous application of *Partridge, supra,* 10 Cal.3d 94, to first party property loss cases.

 By relying on *Brooks, supra,* 27 Cal.2d 305 and construing sections 530 and 532, *Sabella, supra,* 59 Cal.2d 21, sets forth a workable rule of coverage that provides a fair result within the reasonable expectations of both the insured and the insurer whenever there exists a causal or dependent relationship between covered and excluded perils. In multiple cause cases, a proximate cause analysis, focusing on the efficient proximate cause, could be employed to determine whether or not the insured was covered for the loss under the property portion of the homeowner's insurance policy. Indeed, for 10 years following *Sabella,* the Court of Appeal applied the efficient proximate cause analysis in resolving multiple-cause property-coverage questions under all-risk homeowner's property policies. (See, e.g., *Gillis* v. *Sun Ins. Office, Ltd.* (1965) 238 Cal.App.2d 408, 415-420 [47 Cal.Rptr. 868, 25 A.L.R.3d 564] [coverage afforded under policy insuring loss by windstorm but excluding loss from water damage; wind, causing gangway to fall on and sink a dock, was deemed efficient proximate cause of loss]; *Sauer* v. *General Ins. Co.* (1964) 225 Cal.App.2d 275, 278-279 [37 Cal.Rptr. 303] [coverage afforded when water leaking from plumbing system (covered peril) was the efficient proximate cause of subsidence damage (excluded peril)].)

## 2. *The doctrine of concurrent causation*

In 1973, we were faced with a third party tort liability situation that presented a "novel question of insurance coverage" and did not fit the *Sabella* analysis because no single peril could be labeled the predominant cause of the loss. In *Partridge, supra,* 10 Cal.3d 94, the insured was covered under both an automobile liability policy and a homeowner's *liability* policy with comprehensive personal liability coverage. (The latter liability policy excluded losses "arising out of the use" of a motor vehicle.) The insured, after filing the trigger mechanism of his pistol to create a "hair-trigger" action (such negligence was a covered risk under the homeowner's property policy), hunted jackrabbits at night from his vehicle. As he drove over rough terrain while waving the gun in his hand (negligent driving was an excluded risk under homeowner's liability policy), the gun fired and injured a passenger.

First party property coverage issues were not involved. The case concerned the personal *liability* of the insured who was sued by his injured passenger. Both policies were issued by the same insurer, which conceded the accident was covered under the automobile liability policy. The parties,

however, disputed whether coverage was also afforded under the homeowner's liability policy, which excluded coverage for injuries "arising out of the use of motor vehicles." As in *Sabella, supra,* 59 Cal.2d 21, we relied on *Brooks, supra,* 27 Cal.2d 305, at pages 309-310, to find coverage under the homeowner's policy. In analyzing the liability coverage, we explicitly recognized, "the 'efficient cause' language [of *Sabella*] is not very helpful, for here both causes were independent of each other: the filing of the trigger did not 'cause' the careless driving, nor vice versa. Both, however, caused the injury . . . . If committed by separate individuals, both actors would be joint tortfeasors fully liable for the resulting injuries. Moreover, the fact that both acts were committed by a single person does not alter their nature as concurrent proximate causes. (Cf., *Flournoy* v. *State of California* (1969) 275 Cal.App.2d 806, 811 [80 Cal.Rptr. 485].)" (*Partridge, supra,* 10 Cal.3d at p. 104, fn. 10.) We concluded by stating, "Although there may be some question whether either of the two causes in the instant case can be properly characterized as *the* "'prime,' 'moving' or 'efficient' cause of the accident we believe that *coverage under a liability insurance policy* is equally available to an insured whenever an insured risk constitutes simply *a* concurrent proximate cause of the injuries." (*Id.,* at pp. 104-105, fns. omitted, second italics added.)

Because *Partridge* dealt with causation in the context of third party liability insurance, we did not address, nor did we contemplate, the application of our decision to the determination of coverage in the first party property insurance context. Indeed, *Partridge* asserted only that the "concurrent cause" standard was "consistent with Insurance Code sections 530 and 532, as authoritatively construed in *Sabella* v. *Wisler*. . . ." (*Partridge, supra,* 10 Cal.3d at p. 105, fn. 11.)

Furthermore, *Partridge* never considered in what manner concurrent causation could apply in the first party property insurance context. Rather, by recognizing in *Partridge* the "novel question" of liability coverage presented because two separate acts of negligence simultaneously joined together to cause an injury, we also impliedly recognized the limited scope of our holding. We did not extend our holding to first party property insurance cases. Accordingly, we should not apply the decision to such cases merely because it appears to simplify the coverage analysis.

B. *The Distinction Between Liability and Property Insurance*

As we will demonstrate, the decision of the Court of Appeal, in applying the *Partridge* concurrent causation analysis to property damage cases, like other recent insurance cases involving all-risk homeowner's policies, failed to differentiate between property loss coverage under a first party policy and

tort liability coverage under a third party policy of insurance. ■ First- and third party coverage is today typically provided in a single policy, and under both types of coverage, once the insured shows that an event falls within the scope of basic coverage under the policy, the burden is on the insurer to prove a claim is specifically excluded. (See *Clemmer* v. *Hartford Ins.* (1978) 22 Cal.3d 865, 880 [151 Cal.Rptr. 285, 587 P.2d 1098]; *Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532, 537 [226 Cal.Rptr. 435]; *Strubble* v. *United Services Auto. Assn.* (1973) 35 Cal.App.3d 498, 504 [110 Cal.Rptr. 828].) ■ Moreover, exclusionary clauses are interpreted narrowly, whereas clauses identifying coverage are interpreted broadly. (See *Reserve Ins. Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 808 [180 Cal.Rptr. 628, 640 P.2d 764].)

■ The scope of coverage and the operation of the exclusion clauses, however, are different in the separate policy portions and should be treated as such. As one commentator has recently stated: "Liability and corre- sponding coverage under a third party insurance policy must be carefully distinguished from the coverage analysis applied in a first party property contract. Property insurance, unlike liability insurance, is unconcerned with establishing negligence or otherwise assessing tort liability." (Bragg, *Con- current Causation and the Art of Policy Drafting: New Perils for Property Insurers* (1985) 20 Forum 385, 386.)

For these reasons it is important to separate the causation analysis neces- sary in a first party property loss case from that which must be undertaken in a third party tort liability case. The following quotation summarizes the distinction that must be drawn: "Property insurance . . . is an agreement, a contract, in which the insurer agrees to indemnify the insured in the event that the insured property suffers a covered loss. Coverage, in turn, is com- monly provided by reference to causation, e.g., 'loss caused by . . .' certain enumerated perils. [¶] The term 'perils' in traditional property insurance parlance refers to fortuitous, active, physical forces such as lightning, wind, and explosion, which bring about the loss. *Thus, the 'cause' of loss in the context of a property insurance contract is totally different from that in a liability policy.* This distinction is critical to the resolution of losses involv- ing multiple causes. [¶] Frequently property losses occur which involve more than one peril that might be considered legally significant. If one of the causes (perils) arguably falls within the coverage grant—commonly either because it is specifically insured (as in a named peril policy) or not specifically excepted or excluded (as in an "all risks" policy)—disputes over coverage can arise. The task becomes one of identifying the most important cause of the loss and attributing the loss to that cause." (Bragg, *supra,* 20 Forum at pp. 386-387, italics added.)

On the other hand, the right to coverage in the third party liability insurance context draws on traditional tort concepts of fault, proximate cause and duty. This liability analysis differs substantially from the coverage analysis in the property insurance context, which draws on the relationship between perils that are either covered or excluded in the contract. In liability insurance, by insuring for personal liability, and agreeing to cover the insured for his own negligence, the insurer agrees to cover the insured for a broader spectrum of risks. In order to further demonstrate the differences between property loss and liability coverage, we compare two sections of a typical homeowner's policy—the all-risk property loss coverage section of the policy in this case and the personal liability section at issue in *Partridge*.[6]

Each policy section is governed by separate exclusions. For example, the all-risk first party property loss coverage section in this case provides for coverage against "all risk of physical loss" except: losses "caused by . . . settling cracking, shrinkage, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings . . . ."

In comparison, in *Partridge*, "The coverage clause of the 'Personal Liability' section of the 'Homeowner's Policy' provides in relevant part: 'This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence.' . . ." (10 Cal.3d at p. 99, fn. 5.) Moreover, "[t]he applicable exclusionary clause reads: 'This policy does not apply: 1. Under Coverage E—Personal Liability . . . (a) To Bodily Injury or Property Damage Arising Out of the Ownership, Maintenance, Operation, Use, Loading or Unloading of: . . . (2) Any Motor Vehicle Owned or Operated By, or Rented or Loaned to, any Insured . . . .'" (10 Cal.3d at p. 99, fn. 6.)

As the two provisions cited above illustrate, under the all-risk first party property policy, because generally "all risk of physical loss" is covered, the exclusions become the limitation on loss coverage. Under the liability por-

---

[6] We note, however, that since 1983 insurance carriers have changed the all-risk homeowner's property section. The Insurance Services Office (ISO) issued new editions of its all-risk policies in October 1983 and stated in its "Explanatory Memorandum" accompanying the new policy forms that it redrafted the policies in an effort to preserve the effect of unambiguous policy exclusions. ISO's memorandum stated: "The following forms have been revised to restate policy intent. Recent court decisions have so interpreted policies that coverage has been found for losses that are not currently intended to be covered, and in such a way that, in the event of a major catastrophe, insurer solvency could be seriously threatened. The rates for these coverages simply do not contemplate such catastrophic perils." (2 Cal. Insurance Law and Practice, *supra*, at § 36.43.) Because the effect of the new language is unclear, we refer only to pre-1983 policies in our explanation of liability and property insurance coverage and the principles applicable to such policies.

tion of the policy, on the other hand, the focus is, at least initially, on the insured's legal obligation to pay for injury or damage arising out of an "occurrence."

In the property insurance context, the insurer and the insured can tailor the policy according to the selection of insured and excluded risks and, in the process, determine the corresponding premium to meet the economic needs of the insured. On the other hand, if the insurer is expected to cover claims that are outside the scope of the first party property loss policy, an "all risk" policy would become an "all loss" policy. (Friedman, *Concurrent Causation: The Coverage Trap* (1985) 86 Best's Rev.: Prop./Casualty 50, 58.) In most instances, the insured can point to some arguably covered contributing factor. As we shall discuss, if the rule in *Partridge, supra,* 10 Cal.3d 94, were extended to first party cases, the presence of such a cause, no matter how minor, would give rise to coverage.

Finally, as we explain, the reasonable expectations of the insurer and the insured in the first party property loss portion of a homeowner's policy—as manifested in the distribution of risks, the proportionate premiums charged and the coverage for all risks except those specifically excluded—cannot reasonably include an expectation of coverage in property loss cases in which the efficient proximate cause of the loss is an activity expressly *excluded* under the policy. Indeed, if we were to approve of the trial court's directed verdict, we would be requiring ordinary insureds to bear the expense of increased premiums necessitated by the erroneous expansion of their insurers' potential liabilities. (See *Hartford Fire Ins. Co.* v. *Superior Court* (1983) 142 Cal.App.3d 406, 417 [191 Cal.Rptr. 37, 39 A.L.R.4th 189].)

## C. *The Court of Appeal Holding*

■ In reversing the directed verdict, the Court of Appeal rejected defendant's argument that although third party negligence is not specifically excluded in an all-risk policy, it is not a covered peril because it is technically not considered a "risk of physical loss" within the policy terms. We agree and find defendant's claim is not supported by authority. (See, e.g., *Sabella, supra,* 59 Cal.2d 21, 31.)[7]

---

[7] A related issue involves whether courts should distinguish between types of negligence when determining whether a loss caused by negligence is covered under a similar policy. For example, if construction is undertaken on the insured premises for the sole purpose of protecting against the operation of a specifically excluded risk under the homeowner's policy, and that improvement subsequently fails to serve its purpose because it was negligently designed or constructed, the damage to the structure should arguably not be covered. On the other hand, ordinary negligence that contributes to property loss, but does not involve acts undertaken to protect against an excluded risk, may give rise to coverage under an all-risk

 Next, the court recognized that recent first party property loss cases (discussed below) have forsaken the efficient proximate cause analysis developed in *Sabella, supra,* 59 Cal.2d 21, and have looked instead to the holding in *Partridge, supra,* 10 Cal.3d 94, to allow coverage for property damage simply because a nonexcluded risk is an independent proximate cause of the loss. Although the Court of Appeal refused to confine the application of *Partridge* to liability cases, the court did attempt to limit the scope of *Partridge*'s concurrent causation standard in both liability and property cases by requiring the included and excluded perils to be independent of origin *and* independent in operation. Specifically, the Court of Appeal interpreted *Partridge, supra,* 10 Cal.3d 94, as holding that "because each act could have caused the loss regardless of the existence of the other act [citation], they were independent of each other." According to the Court of Appeal: "Neither [cause in *Partridge*] can be said to have necessarily acted upon a condition created by the other, or to have propelled the other, or to have brought to fruition the potential for damage inherent in the other." The Court of Appeal believed the "*Partridge* court would not have found the covered risk to be 'independent' if that risk (negligence) existed only in relation to, [or was dependent on] an excluded risk." Thus, the Court of Appeal determined that in order for coverage to be found under *Partridge,* the concurrent event *alone* must have been a "sufficient condition" of the loss—i.e., capable of producing damage itself.[8]

In its effort to interpret and apply the *Partridge* decision in the present case, however, the court followed the lead of other Court of Appeal decisions and assumed, without discussion, that *Partridge* should apply to first party property insurance policies. In so doing, the court relied on both *Partridge,* and *Sabella, supra,* 59 Cal.2d 21, and announced the following two-tiered rule for determining coverage: "[W]hether the covered risk and excluded risk are causes in fact should be a court's threshold inquiry in cases such as this. If (i) they both are causes in fact and if the two risks are independent of each other, *Partridge* analysis is triggered: the insured is covered if the covered risk was a concurring proximate cause of the loss. If (ii) the two risks are dependent on each other, *Sabella* analysis is triggered: the insured is covered only if the covered risk was the moving cause of the loss." The Court of Appeal determined that the jury in the present case

---

policy. In other words, at some point, courts may want to distinguish between types of negligence when analyzing coverage in a first party property insurance context. The issue, however, was not raised in the present case, and we do not address it here.

[8] The term "sufficient condition" as used by the Court of Appeal misapplied the *Partridge* holding because it implied that negligent driving alone could have caused plaintiff's injury in that case. Although we point out the court's analytical error for purposes of clarifying any confusion the term may have caused, we leave the application of *Partridge* in the liability context to a future liability case that raises the concurrent causation issue.

must decide the coverage issue because it was not clear, as a matter of law, whether the two risks were dependent on or independent of each other.

The Court of Appeal's formulation was an attempt to provide trial courts with an analytical framework from which to determine property insurance coverage when a loss is arguably caused by concurrent causes. The court was on the right track in attempting to reconcile first and third party cases that use the *Partridge* analysis in determining coverage. We believe, however, as set forth above, that the court erroneously failed to limit at the threshold the application of *Partridge* to the third party liability context.[9]

### D. The Misapplication of Partridge in the First Party Property Insurance Context

In *Safeco Ins. Co. of America* v. *Guyton, supra,* 692 F.2d 551, 553, the insurer sought declaratory relief against several insureds after flooding damaged their homes. The trial court rejected the policyholders' claim that the water district's negligence in failing to provide adequate flood control facilities (a covered risk) caused the damage, and held under *Sabella* there was no coverage because the excluded peril—flooding—was the efficient proximate cause of the property damage. The Ninth Circuit Court of Appeals reversed on the basis that the insureds should be allowed to seek coverage under *Partridge, supra,* 10 Cal.3d 94. The court determined that in order for *Partridge* to apply, the covered peril must have existed independently of the excluded peril. The court reasoned, however, that the requirement was met because two independently created conditions interacted to cause the flood damage. Indeed, *Guyton* specifically stated that "the twin causes in *Partridge* were independent only in the sense that each cause had an independent origin, not that they did not interact with one another to cause the loss." (692 F.2d at p. 555.)

As amici curiae for defendant point out, however, *Guyton, supra,* 692 F.2d 551, was actually "a classic case of dependent causation" requiring use

---

[9] As we explained above, *Partridge, supra,* 10 Cal.3d 94, should be limited to the third party tort liability context. In the unusual event that analysis under *Sabella, supra,* 59 Cal.2d 21, would not be useful in a first party property loss case because separate excluded and covered causes simultaneously join together to produce damage—a situation we have yet to address— we may then consider developing an appropriate doctrine of concurrent causation to apply in the property loss context. For example, if property loss were to result from the simultaneous crash of an aircraft into a structure (a covered peril in a typical all risk homeowner's policy) during an earthquake (typically excluded from coverage when it operates alone to cause a loss), it might be impossible to determine (under a *Sabella* analysis) which cause was the efficient proximate cause of the loss. In that "novel" case, we might consider developing a doctrine similar to the present Court of Appeal's independent concurrent causation standard in analyzing coverage under the policy. It would be imprudent to reach such a hypothetical issue here, however, and hence we leave discussion of such a doctrine to a future first party property loss case, should one arise.

of a *Sabella* analysis. Because the damage caused by the defective flood control system was necessarily dependent on flooding, the Ninth Circuit misapplied *Partridge* to find coverage. It should have looked to *Sabella* for resolution to determine whether the defectively maintained flood control system was the efficient proximate cause of the property losses even though the flood was the "immediate" cause of the losses, or whether the trial court correctly denied coverage in determining that flooding was the efficient proximate cause of the loss. The Ninth Circuit specifically ignored the effect of the express policy exclusion contained in the Safeco policy that excluded loss "caused by, resulting from, contributed to or aggravated by any of the following: [¶] a. Flood, surface water. . . ." (*Guyton, supra,* 692 F.2d at pp. 552-553.)

In *Premier Ins. Co.* v. *Welch, supra,* 140 Cal.App.3d 720, 728, a third party's negligence (a covered peril) damaged a subdrain. After a heavy rain, the house slid from its foundation. Water damage was an excluded peril. The trial court relied on *Sabella, supra,* 59 Cal.2d 21, and determined that coverage should be denied because the efficient proximate cause of the loss was the rainfall. The same Court of Appeal division that decided the present case reversed and awarded coverage, concluding under a *Sabella* analysis that the efficient proximate cause of the loss was the damaged subdrain. Notwithstanding this conclusion, the court continued by stating that the insured would be covered in any event under *Partridge, supra,* 10 Cal.3d 94, because "as a matter of law . . . the damage to the drain was a concurrent proximate cause of the loss." (*Premier, supra,* 140 Cal.App.3d at p. 728.)

In its opinion in the present case, the Court of Appeal correctly acknowledged that its earlier interpretation (in *Premier*) of *Partridge*'s independence requirement was wrong. Reviewing the facts of *Premier* the court stated that the property loss caused by the negligently damaged subdrain was dependent on the existence of rainfall, but that nonetheless, the slide would not have occurred if the drain had not been severely damaged. Thus, the Court of Appeal recognized, "*Premier* was simply a *Sabella* situation." As the court admitted, it had reached a satisfactory result under *Sabella, supra,* 59 Cal.2d 21; the *Partridge* analysis was simply unnecessary in *Premier*.[10]

---

[10]The Court of Appeal in *Farmers, supra,* 170 Cal.App.3d 712, upheld a trial court's sustaining of the insureds' demurrers after plaintiff insurer filed a complaint for declaratory relief that certain all-risk homeowner's policies did not afford coverage for property damage caused by earth movement (an excluded peril) after an unusually heavy rainstorm. Although the policies excluded losses caused by earth movement, they did permit coverage for damage resulting from third party negligence. The Court of Appeal relied on *Premier, supra,* 140 Cal.App.3d 720 and *Guyton, supra,* 692 F.2d 551, in stating that the trial court could find coverage if the negligence was found to be a concurrent proximate cause of the individual

## E. *The Trial Court Erred in Directing the Verdict*

■ Finally, because we believe the *Partridge* analysis should be limited to third party liability cases, we cannot sustain the directed verdict in this case. Plaintiffs argue the directed verdict was proper because there was no evidence of sufficient substantiality to support a determination other than the following: the included risk of negligent construction and the excluded risk of earth movement in the form of soil creep, if any, were independent, concurrent proximate causes of the loss plaintiffs sustained to their property.

We disagree. The record does not support either plaintiffs' contention or the hyperbolic characterization of the expert testimony in Justice Mosk's dissent. The record discloses that the experts were in marked disagreement as to the causes of plaintiffs' damages. For example, Mr. Nelson, the defense expert, testified: "There was settlement and creep. The room addition moved away from the house and was caused by—probably caused by settlement and creep." Plaintiffs' expert, Mr. Hillebrandt testified to the contrary. To the question, "Was what happened to the room addition in August 1978 related to any respect to soil creep, in your opinion?" Hillebrandt replied, "In my opinion, it didn't. And the reason is because the actual breaking—the footing of the support beam was actually on a level surface. It was on a level fill surface that had been placed behind the rock wall, and the whole hillside may have been creeping, but this was just one part of it, and it was a level surface." At another point during the trial, however, Hillebrandt testified that the damage to the deck was caused by the following: "In this case, the footing [of the retaining wall] was not deep enough, so consequently, when the creep forces at the surface caused this downhill movement, the footing just went along for the ride."

This case presents a classic *Sabella* situation. Coverage should be determined by a jury under an efficient proximate cause analysis. Accordingly, bearing in mind the facts here, we conclude the question of causation is for the jury to decide.[11] If the earth movement was the efficient proximate cause of the loss, then coverage would be denied under *Sabella, supra,* 59 Cal.2d 21. On the other hand, if negligence was the efficient proximate cause of the

losses. To the extent *Farmers* suggests that the *Partridge* analysis applies in the coverage determination, we disapprove of that decision.

[11] By stating at the outset that our result will automatically produce a victory for the insurer (dis. opn. at p. 416) or that our construction of *Sabella* is "totally devoid of standards" (dis. opn. at p. 427), Justice Mosk's dissent demonstrates its failure to grasp the fundamental precepts of our opinion. Indeed, a reasonable juror could find that under the facts of this case, negligent construction was the predominant cause of the property damage. In any event, the ultimate coverage determination is for the jury.

loss, then coverage exists under *Sabella*. These issues were jury questions because sufficient evidence was introduced to support both possibilities.

The judgment of the Court of Appeal is affirmed with directions to remand the cause to the trial court for further proceedings consistent with the opinion of this court.

Panelli, J., Eagleson, J., and Arguelles, J.,* concurred.

**KAUFMAN, J.**—I concur with the majority's conclusion that the trial court erred in granting a directed verdict in favor of plaintiffs on the coverage issue and that the cause must be remanded to the trial court for further proceedings. However, I cannot subscribe fully to the analysis and reasoning of the majority opinion and am concerned that they are erroneous in part and will lead to yet further confusion in this seemingly perplexing area of the law. I therefore separately concur.

The majority posits that the confusion evidenced in the reported decisions results from the failure to distinguish between first party and third party cases. The majority appears to hold that the "efficient proximate cause" or "predominant cause" analysis of *Sabella* v. *Wisler* (1963) 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889] (hereafter *Sabella*) is applicable in all first party cases and that the concurrent-cause analysis of *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123] (hereafter *Partridge*) is not applicable in first party cases except perhaps, as I understand it, where the concurrent causes are truly independent of each other and neither one can fairly said to be the "efficient" or "predominant" cause of the loss. Although, the majority opinion does not expressly say so, it leaves the impression that the concurrent-causation rule of *Partridge* is applicable to third party cases.

While I recognize important differences between property damage insurance and liability insurance and first party and third party cases, I am doubtful that those differences compel or warrant two separate and entirely different rules for ascertaining the coverage provided by the two kinds of policies. In my view, the confusion in this area of the law results primarily from two major flaws in the *Partridge* decision which have made it all but impossible to reconcile with *Sabella* and which ought to be recognized and disapproved.

The first flaw in *Partridge* is, as the majority suggests, that it imported into the determination of coverage, concepts and rules of tort law inapplica-

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

ble to the contractual question of the coverage afforded by an insurance policy, and, based on them, adopted the tort rule of concurrent causation to determine coverage. One of the principal rationalizations for the rule announced in *Partridge* was that if two different persons had separately performed the two negligent acts involved therein, ((1) filing down the gun's trigger to a hair trigger and (2) driving the vehicle off the road over rough terrain with the gun pointed at the passenger), each actor as a joint tortfeasor would have been liable. Therefore, if the trigger filer had a homeowner's policy including personal liability coverage and the vehicle driver had auto liability insurance, both insurers would have been obliged to indemnify their respective insureds in respect to a judgment against them.

That rationalization accurately reflected tort law, but it failed entirely to recognize that the problem before the court in *Partridge* was not the joint and several liability of joint tortfeasors, but the interpretation of a homeowner's policy owned by the single tortfeasor, which expressly excluded any injury arising out of the use of a motor vehicle. One might ask what the situation would have been if there were in fact two tortfeasors but the vehicle driver had only a homeowner's policy and the trigger filer had only an automobile liability insurance policy. Both tortfeasors would still have been liable under tort law, but neither policy would have afforded coverage for the conduct of the insured and neither insurer would have had any liability. The point is that tort liability on the part of the insured does not establish liability on the part of the insurer unless the policy affords coverage for the conduct of the insured and that is to be determined by contract principles, not tort principles, in both first party and third party cases.

There are to be sure substantial differences between property damage insurance and liability insurance and first party and third party cases. To start with, coverage in property damage insurance is typically phrased in terms of injury caused by certain "risks" or "perils" set forth in the policy, whereas coverage in liability insurance is typically couched in terms of the insured's liability for loss resulting from "an occurrence" as defined in the policy. Because of this difference it may be that the reasonable expectations of insureds will be different under property damage and liability insurance policies. Further, there is a public policy consideration involved in coverage determinations under liability policies that may not be involved in coverage determinations under property damage policies: third party injury and the potential burden on the public fisc in the absence of compensation. These differences and perhaps others may legitimately affect the determination of coverage. But the question of coverage in both first party and third party cases is a contract question and must be determined under contract principles. (*Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges A.G.* (1970) 3 Cal.3d 434, 442 [91 Cal.Rptr. 6, 476 P.2d 406] and cases there

cited; *Atlas Assurance Co. Ltd.* v. *McCombs Corp.* (1983) 146 Cal.App.3d 135, 143 [194 Cal.Rptr. 66]; see also *Producers Dairy Delivery Co., Inc.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920]; *Gray* v. *Zurich Ins. Co.* (1966) 65 Cal.2d 263, 269-270 [54 Cal.Rptr. 104, 419 P.2d 168].)

The other major flaw in the *Partridge* decision is that it mischaracterized the causes of the injury in that case as "independent" and therefore misapplied the rule it was attempting to announce. If there could be a case in which the concurrent causation rule might be appropriate it would be where the causes of the injury were *truly independent of each other* and related to the injury in such a way that neither could fairly be said to be the "efficient" or "predominant" cause. (See maj. opn. p. 409, *ante,* fn. 8.)

But that was not the case in *Partridge*. There the filing of the trigger had set the stage all right; it was in fact an accident waiting to happen. But the hair trigger was activated by the other cause, the bumping and bouncing of the vehicle as it was driven off the pavement over the rough and bumpy ground in pursuit of jackrabbits with the gun pointed at the passenger. Thus, under *Sabella* principles it was the negligent driving of the vehicle over the rough terrain with the gun pointed at the passenger that was the "efficient" or "predominant" cause of the injury and coverage for such accidental injury arising out of the use of a vehicle was expressly excluded by the homeowner's policy. Where the court in *Partridge* went wrong is readily apparent. It looked to the absence of interrelationship between *the two acts of negligence* and concluded *they* were independent (*Partridge, supra,* 10 Cal.3d at p. 104, fn. 10 [" . . . [T]here both causes were independent of each other: the filing of the trigger did not 'cause' the careless driving, nor vice versa."].)

It is not enough, however, that the negligent acts are independent. That is frequently the case. The minimum requirement that could make the *Partridge* concurrent cause rule appropriate would be that the concurrent causes of the injury were wholly independent of each other and related to the injury in such a way that neither could fairly be said to be the "efficient" or "predominant" cause of the injury. (See e.g., maj. opn. p. 409, fn. 8.) This analytic fault in *Partridge* has led a number of courts to misconstrue *Partridge*'s "independence" requirement and thus erroneously to apply the *Partridge* rule. (See e.g., *Farmer's Ins. Exchange* v. *Adams* (1985) 170 Cal.App.3d 712, 722 [216 Cal.Rptr. 287]; *Premier Ins. Co.* v. *Welch* (1983) 140 Cal.App.3d 720, 728 [189 Cal.Rptr. 657]; *Safeco Ins. Co. of America* v. *Guyton* (9th Cir. 1982) 692 F.2d 551, 554-555.)

Thus, while I would not say there is no case in which an independent concurrent causation rule similar to that set forth in *Partridge* might be

useful or helpful, I find *Partridge* fundamentally flawed in the several respects mentioned and would overrule it to the extent it is inconsistent with the views here expressed.

Panelli, J., concurred.

**MOSK, J.**—I dissent.

The question to be resolved in this case is the liability *vel non* of an insurer when multiple risks—including perils insured against and perils excepted from coverage—concur to cause a loss. In *Sabella v. Wisler* (1963) 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889], and *State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123], the court set forth the governing rule. In the years that have followed, however, the federal courts and the state Courts of Appeal have inconsistently construed and applied *Sabella* and *Partridge*.[1] Because of the importance and evident difficulty of the question, the court has decided to address the matter anew. As I shall explain, I am of the opinion that the rule is as follows: When two risks, one included within the coverage of the policy and the other excluded, concur as proximate causes in producing a loss and are dependent—i.e., when one sets the other in motion—there is coverage if the included risk triggers the excluded, but not if the excluded triggers the included. When, however, the included and excluded risks concur as proximate causes in producing a loss and are independent—i.e., when one does not set the other in motion—coverage exists in all cases.

The majority, I must acknowledge, have succeeded in reaching a clear result: in this court, the insurer wins and the insureds lose. But they have

---

[1] E.g., *State Farm Fire & Casualty Co. v. Keenan* (1985) 171 Cal.App.3d 1 [216 Cal.Rptr. 318]; *Farmers Ins. Exchange v. Adams* (1985) 170 Cal.App.3d 712 [216 Cal.Rptr. 287]; *Daggs v. Foremost Ins. Co.* (1983) 148 Cal.App.3d 726 [196 Cal.Rptr. 193]; *Ohio Casualty Ins. Co. v. Hartford Accident & Indemnity Co.* (1983) 148 Cal.App.3d 641 [196 Cal.Rptr. 164]; *Atlas Assurance Co. v. McCombs Corp.* (1983) 146 Cal.App.3d 135 [194 Cal.Rptr. 66]; *Underwriters Ins. Co. v. Purdie* (1983) 145 Cal.App.3d 57 [193 Cal.Rptr. 248]; *Hartford Fire Ins. Co. v. Superior Court* (1983) 142 Cal.App.3d 406 [191 Cal.Rptr. 37, 39 A.L.R.4th 189]; *Safeco Ins. Co. v. Gilstrap* (1983) 141 Cal.App.3d 524 [190 Cal.Rptr. 425]; *Premier Ins. Co. v. Welch* (1983) 140 Cal.App.3d 720 [189 Cal.Rptr. 657]; *Allstate Ins. Co. v. Jones* (1983) 139 Cal.App.3d 271 [188 Cal.Rptr. 557]; *State Farm Fire & Cas. Co. v. Kohl* (1982) 131 Cal.App.3d 1031 [182 Cal.Rptr. 720]; *National Indemnity Co. v. Farmers Home Mutual Ins. Co.* (1979) 95 Cal.App.3d 102 [157 Cal.Rptr. 98]; *State Farm Fire & Cas. Co. v. Camara* (1976) 63 Cal.App.3d 48 [133 Cal.Rptr. 600]; *Gonzalez v. St. Paul Mercury Ins. Co.* (1976) 60 Cal.App.3d 675 [131 Cal.Rptr. 626]; *Arata v. California-Western States Life Ins. Co.* (1975) 50 Cal.App.3d 821 [123 Cal.Rptr. 631]; *Glens Falls Ins. Co. v. Rich* (1975) 49 Cal.App.3d 390 [122 Cal.Rptr. 696]; *United Services Automobile Assn. v. United States Fire Ins. Co.* (1973) 36 Cal.App.3d 765 [111 Cal.Rptr. 595]; *Safeco Ins. Co. of America v. Guyton* (9th Cir. 1982) 692 F.2d 551, reversing (C.D. Cal. 1979) 471 F. Supp. 1126; *Safeco Ins. Co. of America v. Guyton* (C.D.Cal.) 471 F.Supp. 1126, reversed (9th Cir. 1982) 692 F.2d 551.

failed to offer a sound rationale in support. They claim that *Sabella* establishes a single rule of "efficient proximate cause" or "predominating cause"; that *Partridge* is, and should be, limited to third party insurance policies; and that in any event *Partridge* is inapplicable on the facts of this case. But as will appear, none of these claims is well founded.

I

In 1974 plaintiffs Jack and Rita Garvey purchased a house in Fairfax. It appears that the house was built prior to 1938; it sat on a hill, with a downslope to the rear; a rock wall of unknown age was located on the downslope; at some time before 1960, a deck was constructed below the southeast corner of the house; in 1960, a room addition was built onto the lower southwest portion of the house on level ground. At all times relevant herein Mr. Garvey was a lawyer and a professor of law.

In 1977 plaintiffs purchased from defendant State Farm Fire and Casualty Company a policy of homeowner's insurance, which was in effect at all times relevant. The policy was what is commonly known as an "all risk" policy—i.e., a policy that covers all perils generally and without enumeration except those specifically excepted, as opposed to the typical policy which specifies both included and excluded perils. The policy in question provided coverage for "all risk of physical loss," except the following: losses "caused by, resulting from, contributed to or aggravated by any earth movement, including but not limited to earthquake, volcanic eruption, landslide, mudflow, earth sinking, rising or shifting," and losses caused "by . . . settling, cracking, shrinkage, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings . . . ."

In August 1978 the room addition, which was built on level ground, separated from the main structure. It was subsequently discovered that the room had neither a foundation nor any structural connection to the house. Around the same time plaintiffs found that the deck constructed below their house had suffered damage.

Plaintiffs undertook to determine from defendant whether the loss they had sustained was covered by their homeowner's insurance policy, and eventually submitted a claim for $11,550. Over a period of many months defendant investigated the matter; over the same period Mr. Garvey and defendant's counsel disputed about the law that should govern the determination of the claim. Plaintiffs became dissatisfied with the pace of the investigation and advised defendant that they might institute class-action litigation involving breach of the covenant of good faith and fair dealing with

regard to its interpretation of the earth movement exclusion of the home-owner's policy.

In October 1979, after receiving from counsel an opinion that the loss was not covered, defendant notified plaintiffs by letter that the "policy excludes coverage for the loss herein. Normally, such a denial of coverage would leave you to your remedies. [¶] However, because the company wishes to resolve the coverage issue in an atmosphere free from extraneous matters such as bad-faith and class-action issues, the company is prepared to advance you the claimed sum of $11,550 subject to a reservation of rights as authorized by Johansen v. CSAA, 15 Cal.3d 9, 123 Cal.Rptr. 288." Under the agreement proposed, defendant would make the advance and file a declaratory relief action on the issue of coverage; and plaintiffs would pay back the advance if the court ruled in defendant's favor, would waive "any claim of consequential or punitive damages arising out of any allegation of bad-faith, mental distress, oppression, fraud or insurance-related tort," and would not "institute any class-action against defendant on account of the facts and issues involved in this loss and claim."

Thereupon, plaintiffs filed the complaint in this action. They asserted against defendant the following causes of action, among others. First, they alleged that defendant had breached its obligations under the policy to pay for the loss they had sustained to their property. They next alleged that defendant had violated the covenant of good faith and fair dealing both in its decision to deny their claim and in its general handling of the matter, including the tendering of the so-called "*Johansen*" agreement; they further stated that defendant's conduct caused them emotional distress; they also stated that defendant acted with intent to oppress and defraud. Plaintiffs further alleged that defendant violated various provisions of the Insurance Code, both in its decision to deny the claim and in its general handling of the matter, and that it thereby caused them emotional distress; they further stated that defendant acted with intent to oppress and defraud. Plaintiffs prayed for compensatory damages for economic and noneconomic injury; they also prayed for punitive damages.

Trial was by jury. Plaintiffs' expert, Donald H. Hillebrandt, and defendant's expert, Jay A. Nelson, agreed that negligent construction was a direct and substantial cause of the loss that plaintiffs sustained to their property. For example, Hillebrandt responded to the question, "In your opinion, is there any particular reason that the [room] addition gave way when it did as opposed to two years earlier or two years later or some other time?," as follows: "Not really . . . . [I]t was just kind of a failure waiting to happen, and it's hard to say what triggered it. It was basically faulty construction and at some given time—you know, sometimes if these things occur during

the winter you can kind of say, well, maybe the soil was soft or weak or—but this, in my understanding, occurred during the summer in the dry season. So it was tacked on there, it reached a point where it was over stressed. The nails couldn't hold it any more, there were no ties at the foundation level, no ties at the roof level, no ties at the floor level, and it just fell away." Nelson testified to similar effect. "[B]ad construction," he stated, "was one reason why [the room addition] settled."

The experts did not agree, however, as to whether and if so to what extent earth movement played a part. For example, Nelson stated soil creep was a cause of the separation of the room addition from the main structure. Hillebrandt testified to the contrary. To the question, "Was what happened to the room addition in August of 1978 related to any respect to soil creep, in your opinion?," Hillebrandt responded: "In my opinion, it didn't. And the reason is because the actual breaking—the footing of the support beam was actually on a level surface. It was on a level fill surface that had been placed behind the rock wall, and the whole hillside may have been creeping, but this was just one part of it, and it was a level surface." Nelson testified that although he believed both negligent construction and soil creep were causes of the loss to the room addition, he could not make a determination as to their relative order or significance: "Well, it all goes back to the chicken or the egg. I mean, which comes first."

Plaintiffs also introduced evidence to show that defendant breached its obligations under the terms of the policy, the covenant of good faith and fair dealing, and the Insurance Code not only by its decision to deny the claim but also by its handling of the matter generally.

After the parties rested, on plaintiffs' motion the trial court directed a verdict in their favor on the issue of coverage. In support of the ruling, it stated: "[The Supreme Court] told me in *Sabella* that negligent construction can be a proximate cause. They told me in *Partridge* there may be coverage whenever an insured risk constitutes simply a concurrent proximate cause of the injuries. [¶] Now, to me that is crystal clear, putting those two causes together, that if negligent construction is a concurrent proximate cause of the loss, there is coverage." The court continued: "The key witness for the defense, Mr. Nelson, conceded in his testimony, as I heard it and understood it, that the negligent construction was a cause of the room falling away. He did not use the word 'proximate.' He said a causative factor at one time. I don't recall the exact language when he answered a question. In substance, that it was a cause on another occasion. As a matter of law, based upon the evidence, it was a proximate cause."

The trial court subsequently instructed the jury with regard to the remaining issues in the case. Because plaintiffs' allegation of, and evidence on,

"bad faith" related to conduct other than the actual decision to deny the claim, the court charged the jurors that the "ruling directing a verdict of the issue of coverage shall have no bearing on any issue remaining in this case." It further instructed them that "An attorney has the right to give a legal opinion to his client. The mere fact that the attorney's opinion turns out later to be erroneous does not by itself make the giving of the opinion unreasonable or constitute evidence of bad faith on the part of the client." It went on: "Therefore, you should concern yourself not with the correctness or incorrectness of the legal point of view of the attorney, but with whatever circumstances, if any, you find relevant which bear upon the state of mind of the attorney at the time."

The jury rendered a general verdict in favor of plaintiffs and against defendant, and assessed damages in the amount of $1,047,593. As its answers to special interrogatories reveal, the jury found that defendant had breached both the terms of the policy (thereby entitling plaintiffs to compensatory damages in the amount of $19,790) and the covenant of good faith and fair dealing (thereby entitling them to compensatory damages in the amount of $27,803). It also found that defendant was liable for punitive damages, and assessed the amount at $1 million. The court entered judgment in accordance with the verdict. From that judgment defendant appealed.

On appeal, the parties raised several contentions. Some went to the issue of coverage and to the directed verdict; others went to other issues.

By a two-to-one vote, the Court of Appeal reversed. At the threshold the majority rejected defendant's claims that *Partridge* is applicable only to third party liability policies and that in any event negligence could not be deemed a risk included within the coverage of the policy.

Reviewing *Sabella* and *Partridge* and many of the cases in which those decisions had been construed and applied, the Court of Appeal majority fashioned the following interpretation of *Sabella* and *Partridge*: "[W]hether the covered risk and excluded risk are causes in fact should be a court's threshold inquiry . . . . If (i) they both are causes in fact and if the two risks are independent of each other, *Partridge* analysis is triggered: the insured is covered if the covered risk was a concurring proximate cause of the loss. If (ii) the two risks are dependent on each other, *Sabella* analysis is triggered: the insured is covered only if the covered risk was the moving cause of the loss." Crucial to the majority's interpretation was the meaning it gave to the term "independent": causes are independent when they are of separate origin *and are each a sufficient condition of the loss in question.*

Applying its interpretation to the facts of this case, the Court of Appeal majority concluded that in directing the verdict for plaintiffs on the issue of coverage the trial court erred. It reasoned as follows: "It may be that the loss was due to the fact that the covered risk (negligent construction of the house addition) was dependent on the excluded risk (earth movement). In other words, if the negligently constructed house addition was the agency through which the earth movement caused the loss, then coverage would be denied under *Sabella*. On the other hand, if the house addition was negligently constructed such that the addition is what caused the earth to move with the resulting loss, then coverage exists. Finally, if the earth was caused to move independent of the house addition and the addition was tearing away from the house independent of the earth movement, with the two happening to join together to cause the loss, then coverage exists. All of these issues were jury questions because sufficient evidence was introduced to support all three possibilities."

The majority did not address any other contentions raised by the parties going to the issue of coverage, and did not reach any of the contentions bearing on other issues. It reasoned that because it had held that the directed verdict on coverage was error, "the entire judgment must be reversed (see *Johansen* v. *California State Auto Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 19 [123 Cal.Rptr. 288, 538 P.2d 744] [if there is no coverage, defendant cannot be liable for damages flowing from refusal to settle a claim])."

Finding that the majority's "newly discovered independence requirement is neither mandated by, nor is it consistent with, the decision in *Partridge,*" the dissenting member of the Court of Appeal read the cases as follows: *Sabella* governs "where the injury causing agent is literally set in motion, like the first toppled domino, by a single cause"; *Partridge* controls when the causes are not in a "chain," and declares simply that "where one of the concurrent proximate causes of a loss is a covered risk the policy provides coverage." Under this interpretation, the dissenter would have affirmed the judgment.

## II

Plaintiffs contend that under *Sabella* v. *Wisler, supra,* 59 Cal.2d 21, and *State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94, the directed verdict in this case was proper. I agree.

In *Sabella,* the insurer issued to the insureds a fire insurance policy on their house containing an "'All Physical Loss' Building Endorsement." Under the endorsement, the insurer agreed to insure the house "against all

risks of physical loss except as hereinafter excluded." In the subdivision "Exclusions," it was stated: "This endorsement does not insure against loss . . . by . . . settling . . . ." Subsequently, the house suffered damage that was caused by settling, which in turn was caused by the rupture of a sewer line attributable to the negligence of the builder and the consequent emptying of waste water into loose fill on which the house was built. Thereupon, the insureds brought an action against the insurer, among others, seeking recovery for their loss. Determining that the insurer was exempt from liability under the policy because the loss was caused by "settling" within the meaning of the exclusion clause, the trial court entered judgment in its favor.

Having granted a hearing in the matter, we reversed. Our reasoning was as follows. "Plaintiff [insureds] . . . correctly argue . . . that defendant [insurer] is liable because the rupture of the sewer line attributable to the negligence of a third party, rather than settling, was the efficient proximate cause of the loss. The policy excepted *loss by settling,* and the findings of the court below indicate that the broken sewer line emptied waste water into the loose fill, setting in motion the forces tending toward settlement. As stated in 6 Couch, Insurance (1930) § 1466, '[I]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster.' . . .

". . . . . . . . . . . . . . . . . . .

"Defendant insurer attempts to establish its non-liability by reliance upon section 532 of the Insurance Code, which states that 'If a peril is specially excepted in a contract of insurance and there is a loss which would not have occurred but for such peril, such loss is thereby excepted even though the immediate cause of the loss was a peril which was not excepted.' The insurer's argument is that since in a factual sense the loss herein would not have occurred 'but for' the settling of the underlying earth and house, the plaintiffs are thereby exempt from coverage for this loss. But section 532 must be read in conjunction with related section 530 of the Insurance Code (*Pacific etc. Co.* v. *Williamsburgh City Fire Ins. Co.* [(1910)] 158 Cal. 367, 372 [111 P. 4]), and section 530 provides that 'An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause.' It is thus apparent that if section 532 were construed in the manner contended for by defendant insurer, where an excepted peril operated to any extent in the chain of causation so that the resulting harm

would not have occurred 'but for' the excepted peril's operation, the insurer would be exempt even though an insured peril was the proximate cause of the loss. Such a result would be directly contrary to the provision in section 530, in accordance with the general rule, for liability of the insurer where the peril insured against proximately resulted in the loss[.] [Citation.]

"It would appear therefore that the specially excepted peril alluded to in section 532 as that 'but for' which the loss would not have occurred, is the peril proximately causing the loss [citation], and the peril there referred to as the 'immediate cause of the loss' is that which is immediate in time to the occurrence of the damage." (59 Cal.2d at pp. 31-34.)

In *Partridge,* the insurer issued to the insured a "Homeowner's Policy," which contained, in addition to the normal coverage against fire and theft, a common comprehensive "personal liability" provision generally covering the insured for all personal liability not falling within specified exclusions. Among the exclusions was "Bodily Injury . . . Arising Out of the . . . Use . . . of . . . Any Motor Vehicle . . . ."

One evening, the insured took two friends, Vanida Neilson and Ray Albertson, out for a drive in the countryside in his four-wheel-drive Ford Bronco. With Vanida sitting between them in the front seat, the insured and Albertson hunted jackrabbits by shooting out of the windows of the moving vehicle; the insured was using a .357-caliber Magnum pistol whose trigger mechanism he had filed to produce a "hair trigger action." As he was driving, the insured spotted a jackrabbit running across the road and—in order to keep the animal within the range of his headlights—steered the vehicle off the pavement onto the adjacent rough terrain. He hit a bump; the pistol—which he was then holding in his lap or on top of the steering wheel pointed in Vanida's direction—discharged; and a bullet penetrated through the woman's left arm and down to her spinal cord and caused paralysis. Vanida then filed a personal injury action against the insured.

Thereupon, the insurer brought a declaratory judgment action, claiming inter alia that it was exempt from liability under the homeowner's policy through the operation of the "use-of-a-motor-vehicle" exclusion. The trial court disagreed. It first found that the insured had been negligent both in modifying the pistol and in driving his vehicle off the paved road onto the rough terrain. It also found that these two negligent acts were independent, concurrent proximate causes of Vanida's injuries. Finally, it concluded, inter alia, that the homeowner's policy afforded coverage. Accordingly, it entered judgment holding the insurer liable.

Having granted a hearing in the matter, we affirmed. Our reasoning was as follows. "[T]he crucial question presented is whether a liability insurance

policy provides coverage for an accident caused jointly by an insured risk (the negligent filing of the trigger mechanism) and by an excluded risk (the negligent driving). [The insured] correctly contend[s] that when two such risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy.

"· · · · · · · · · · · · · · · ·

"In *Brooks* v. *Metropolitan Life Ins. Co.* (1945) 27 Cal.2d 305 [163 P.2d 689] this court faced a somewhat similar problem of determining insurance coverage in a case involving a multiplicity of causes. In *Brooks,* an insured, afflicted with debilitating cancer, was covered by an accident policy which excluded ' "injury . . . [or] death . . . caused wholly or partly, directly or indirectly, by disease or mental infirmity . . . ." ' [Citation.] The insured died in a fire, and the insurer sought to escape liability by establishing that a healthy individual would not have perished and thus that the insured's infirm condition did contribute to his death. While acknowledging that the insured's condition did contribute to his death, our court rejected the insurer's contention that coverage was unavailable simply because one of two joint causes of the death was an excluded risk. Chief Justice Gibson, writing for a unanimous court, declared that under such circumstances 'the presence of preexisting disease or infirmity will not relieve the insurer from liability *if the accident is the proximate cause of death* . . . [R]ecovery may be had even though a diseased or infirm condition appears to actually contribute to cause the death if the accident sets in progress the chain of events leading directly to death, or if it is the prime or moving cause.' [Citation.] The court accordingly permitted recovery under the policy.

"The rationale of the *Brooks* decision equally applies to the instant case. Here, as in *Brooks,* an insured risk (the modification of the gun) combined with an excluded risk (the negligent use of the car) to produce the ultimate injury. Although there may be some question whether either of the two causes in the instant case can be properly characterized as *the* 'prime,' 'moving' or 'efficient' cause of the accident[10] we believe that coverage under a liability insurance policy is equally available to an insured whenever an insured risk constitutes simply *a* concurrent proximate cause of the injuries.[11] That multiple causes may have effectuated the loss does not negate any single cause; that multiple acts concurred in the infliction of injury does not nullify any single contributory act.

"· · · · · · · · · · · · · · · ·

"In the instant case the trial court specifically found that [the insured's] negligence in filing the trigger mechanism of his gun constituted a proxi-

mate cause of Vanida's injuries. Applying the above principles, we conclude that the trial court properly found the homeowner's policy applicable to the accident." (10 Cal.3d at pp. 102-105, fn. omitted and italics in original.)

In footnote 10 to the *Partridge* opinion, we stated as follows. "In *Sabella* v. *Wisler* (1963) 59 Cal.2d 21, 31-32 [27 Cal.Rptr. 689, 377 P.2d 889], the court, quoting 6 Couch on Insurance (1930) section 1466, restated the *Brooks* principle in terms of 'efficient cause': ' "[I]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is attributed, though the other causes may follow it, and operate more immediately in producing the disaster." ' In *Sabella,* although damage to an insured dwelling resulted from 'settling,' an excluded risk, the court found that the settling, in turn, had resulted directly from leakage from a broken sewer pipe, an insured risk; on these facts the 'efficient cause' terminology was useful, because the court could find that the break in the pipe 'set the other cause,' settling, 'in motion.' [Citations.]

"In the instant case, however, the 'efficient cause' language is not very helpful, for here both causes were independent of each other: the filing of the trigger did not 'cause' the careless driving, nor vice versa. Both, however, caused the injury. In traditional tort jargon, both are concurrent proximate causes of the accident, the negligent driving constituting an intervening, but non-superseding, cause of the accident." (10 Cal.3d at p. 104, fn. 10.)

In footnote 11, we stated as follows. "Our conclusion that coverage is available whenever an insured risk constitutes a proximate cause of an accident, even if an excluded risk is a concurrent proximate cause, is consistent with Insurance Code sections 530 and 532, as authoritatively construed in *Sabella* v. *Wisler* (1963) 59 Cal.2d 21 [27 Cal. Rptr. 689, 377 P.2d 889] (discussed in fn. 10, *supra*). . . .

"In interpreting these two sections in light of one another, the *Sabella* court rejected the insurer's contention that coverage was unavailable whenever an excluded risk constituted a 'but for' cause of an accident. The *Sabella* court declared: '[I]f section 532 were construed in the manner contended for by defendant insurer, where an excepted peril operated to any extent in the chain of causation so that the resulting harm would not have occurred "but for" the excepted peril's operation, the insurer would be exempt even though an insured peril was the proximate cause of the loss. Such a result would be directly contrary to the provision in section 530, in accordance with the general rule, for liability of the insurer where the peril

insured against proximately resulted in the loss.' [Citation.]" (10 Cal.3d at p. 105, fn. 11.)

Thus, *Sabella* and *Partridge* stand for the following rule. When two risks, one included within the coverage of the policy and the other excluded, concur as proximate causes in producing a loss and are dependent—i.e., when one sets the other in motion—there is coverage if the included risk triggers the excluded, but not if the excluded triggers the included. When, however, the included and excluded risks concur as proximate causes in producing a loss and are independent—i.e., when one does not set the other in motion—coverage exists in all cases.

I turn now to the case at bar. Under the *Sabella-Partridge* rule, the directed verdict was proper. It is the law that "Such a verdict may be properly granted if and only if, after disregarding conflicting evidence, and indulging every legitimate inference which may be drawn from the evidence in [the opposing party's] favor, it can be said that there is no evidence of sufficient substantiality to support a jury verdict in [that party's] favor." (*Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 120-121 [52 Cal.Rptr. 561, 416 P.2d 793].) Here there was no evidence of sufficient substantiality to support a determination in defendant's favor.

Specifically, the evidence adduced at trial establishes without dispute that the included risk—negligent construction—and the excluded risk—soil creep—were independent: neither set the other in motion. Thus, there is no evidence of sufficient substantiality to support a jury finding to the contrary. Contrary to the majority's assertion, this case clearly does *not* "present[ ] a classic *Sabella* situation." (Maj. opn. at p. 412, *ante*.) Indeed, the record is not as the majority represent. As stated above, defendant's expert Nelson testified in effect that both negligent construction and soil creep were direct and substantial causes of the loss to the room addition, but that neither could be termed the prime, moving, efficient, or predominant cause. Plaintiff's expert Hillebrandt testified that there was only one cause, negligent construction.

The evidence also reveals—as the trial court expressly held—that negligent construction was a proximate cause of the loss as a matter of law. As stated above, plaintiffs' expert Hillebrandt and defendant's expert Nelson agreed that negligent construction was a direct and substantial cause of the loss. Thus, there is no evidence of sufficient substantiality to support a jury finding that negligent construction was not a proximate cause. It is true, as I recognized above, that the experts did not agree as to whether and if so to what extent soil creep played a part. But that disagreement is immaterial here: since the included risk of negligent construction was *a* proximate

cause of the loss, coverage existed under the policy even if the excluded risk of soil creep was also a proximate cause.

The majority claim that *Sabella* establishes a single "workable" rule of concurrent causation generally applicable to all cases—i.e., a rule of "efficient proximate cause" or "predominating cause." (Maj. opn. at pp. 403-404, *ante*.) I cannot agree that *Sabella* establishes such a rule: the very language of the opinion, quoted at length above, is to the contrary. Nor can I agree that such a rule would be "workable": to my mind, it is so totally devoid of standards as to allow—indeed, encourage—insureds always to claim coverage, insurers always to deny coverage, and juries always to decide between them arbitrarily.

The majority also claim that *Partridge* applies, and should apply, only to third party insurance policies. Again I cannot agree. Although the policy under consideration in *Partridge* happened to provide liability insurance, the court's discussion there does not suggest that the analysis is or should be limited to such policies; indeed, it cites and relies on first party and third party cases without distinction. Indeed, apparently no reported decision has ever found in *Partridge* the limitation the majority now "discover."

Moreover, I do not find persuasive any of the arguments the majority present in support of limiting *Partridge* to third party insurance policies. First, analysis of concurrent causation is not different for first party and third party policies. I recognize, of course, that such policies differ the one from the other: the former indemnifies the insured for losses he sustains directly when he suffers damage to or destruction of his own property; the latter indemnifies the insured for losses he sustains indirectly when he incurs liability to a third party. But I do not see how the analysis of concurrent causation differs between first party and third party policies. In my view, the same principles apply to the determination of coverage both when the insured suffers direct loss through the concurrence of an included risk (such as fire) and an excluded risk (such as earthquake) *and* when the insured suffers indirect loss through the concurrence of an included risk (such as negligent use of a gun) and an excluded risk (such as negligent use of an automobile).

Second, *Partridge* would not frustrate the reasonable expectation of the insurer and insured in a first party policy. The majority imply that it would be inappropriate to allow coverage when included and excluded risks concur as independent proximate causes of a loss. I strongly disagree. In my opinion, it is altogether appropriate to find the insurer liable when an *included* risk—i.e., a risk the insured has paid the insurer a premium to

assume—is a proximate cause of the loss: in such a situation the insurer merely gives the insured the benefit of the protection he has purchased.

Third, *Partridge* would not lead to a result unfair to the insurer. The majority assert that "if the rule in *Partridge* . . . were extended to first party cases, the presence of [an included risk] . . . , no matter how minor, would give rise to coverage." (Maj. opn. at p. 408, *ante.*) Again I strongly disagree. As its very terms show, *Partridge* applies only when an included risk is a *proximate*—i.e., substantial—cause.

In the course of their discussion, the majority express general approval of the Court of Appeal majority opinion. I cannot concur.

Crucial to the analysis of the Court of Appeal majority is their holding that *Partridge* requires the concurrent causes to be independent in the sense that each is a sufficient condition of the loss. In *Partridge,* however, this court clearly stated: "[*H*]*ere both causes were independent of each other: the filing of the trigger did not 'cause' the careless driving, nor vice versa.* Both, however, caused the injury. In traditional tort jargon, both are concurrent proximate causes of the accident . . . ." (10 Cal.3d at p. 104, fn. 10, italics added.)

As the majority themselves recognize, it is plain from *Partridge* that the causes of a loss must be independent only in the sense that each was of separate origin. In that case, the court held the two causes—the insured's negligent modification of his pistol and his careless driving of his vehicle—to be independent. Each was indeed of separate origin. But unlike, for example, the independent acts of the two motorcyclists who negligently rode past a man on horseback and caused the animal to run away and the man to be injured (*Corey v. Havener* (1902) 182 Mass. 250 [65 N.E. 69]), neither the modification of the pistol nor the driving of the vehicle was a sufficient condition of the injury in question. The "traditional tort jargon" that the court used suggests the same limited scope of the "independence" requirement. "A 'concurrent cause [ ]' . . . is a substantial cause which combines with another substantial cause to effect the loss, *neither being sufficient to do so alone.*" (Brewer, *Concurrent Causation in Insurance Contracts* (1961) 59 Mich.L.Rev. 1141, 1145, italics added; see generally Peaslee, *Multiple Causation and Damage* (1934) 47 Harv.L.Rev. 1127.)

Read against *Partridge,* the Court of Appeal majority opinion is clearly wrong. First, its interpretation of *Partridge* changes the definition that this court gave the term "independent" in its opinion. This court's words, which are quoted above, in no way suggest that to be "independent" a cause must constitute a sufficient condition of the loss in question. Second, the interpre-

tation of *Partridge* set forth in the Court of Appeal majority opinion, if applied to the facts of that case, would lead to a result opposite to that which this court reached. *Partridge* contains no facts from which it could be concluded that either the negligent filing of the trigger or the careless driving of the vehicle constituted a sufficient condition of the injury in question. Under the interpretation of the Court of Appeal majority, there would have been no coverage in that case: the negligent filing of the trigger cannot be deemed the "moving" cause of the careless driving and hence could not be held to be the responsible cause of the loss.

Moreover, even if the interpretation of *Partridge* set forth in the Court of Appeal majority opinion were not clearly incorrect, I would be compelled to reject it as unworkable. As the dissenting member of the Court of Appeal soundly stated, "In order to comply with its new *independent cause* requirement the majority returns this case for retrial, directing the jury to follow what can only be characterized as a maze-like analytical pattern which may yield an answer as to coverage or then again may not. . . . [¶] None of these results will, I suspect, further the cause of creating greater predictability in coverage cases or in limiting coverage to risks against which the parties sought to insure. Indeed, under the rule set out by the majority the writing of policy exclusions will become the most arcane of art forms. The policies so produced will only puzzle the insureds and engender more bad faith litigation. These problems need not arise, however, if we read *Partridge* to mean what it holds, namely that there is coverage when an insured risk is a 'concurrent proximate cause' of injury."

Although the majority do not discuss the point, I recognize that if the matter were of first impression Insurance Code sections 530 and 532 (hereinafter sections 530 and 532) might be susceptible of an interpretation different from that which this court has previously adopted. Section 530 states: "An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause." Section 532 states: "If a peril is specially excepted in a contract of insurance and there is a loss which would not have occurred but for such peril, such loss is thereby excepted even though the immediate cause of the loss was a peril which was not excepted." These provisions might perhaps be read as follows: When an included risk was the proximate cause of a loss, there is coverage whether or not a risk not specified in the policy was a remote cause of that loss; but when the included risk was only a remote cause, there is no coverage. When, however, an excluded risk was a cause in fact of a loss, there is no coverage whether or not the immediate cause of that loss was either an included risk or an unspecified risk.

Even if I should believe that the foregoing interpretation of sections 530 and 532 is consistent with the intent of the Legislature when it enacted the provisions in 1872 as Civil Code sections 2626 and 2628, I would be reluctant to adopt it now. As I shall explain, I think that the Legislature has clearly approved the interpretation of sections 530 and 532 that this court originally set forth in 1910 in *Pacific etc. Co.* v. *Williamsburgh City Fire Ins. Co.* (1910) 158 Cal. 367 [111 P. 4], and reiterated more recently in *Sabella* and *Partridge.*

In determining the question of legislative approval, a court applies well-settled principles. " 'After the enactment of a statute, when a construction has been placed upon it by the highest court of the state, it will be steadily adhered to in subsequent cases, unless very plainly shown to have been wrong, and more especially where the construction so given is supported by a line of uniform decisions, and where it has been acquiesced in by the legislature for a succession of years. In that case, the construction becomes as much a part of the statute as if it had been written into it originally.' " (*People* v. *Hallner* (1954) 43 Cal.2d 715, 720 [277 P.2d 393]; accord, *People* v. *Curtis* (1969) 70 Cal.2d 347, 352 [74 Cal.Rptr. 713, 450 P.2d 33].)

Further, although "[the Legislature], of course, is not required to act each time a statute is interpreted erroneously and legislative silence in the face of such interpretation is not necessarily equivalent to legislative approval[,] . . . a consistent . . . interpretation of a statute, shown clearly to have been brought to the attention of [the Legislature] and not changed by it, is almost conclusive evidence that the interpretation has [legislative] approval." (*Kay* v. *Federal Communications Commission* (D.C. Cir. 1970) 443 F.2d 638, 646-647, fns. omitted [administrative interpretation of statute]; accord, *J.H. Rutter Rex Mfg. Co., Inc.* v. *United States* (5th Cir. 1983) 706 F.2d 702, 711.)

Applying the foregoing principles, I believe that the Legislature has given its approval to this court's interpretation of sections 530 and 532. First, the Legislature has acquiesced in that interpretation for more than three-quarters of a century. Second and more important, it has actively manifested its approval of those provisions as construed. To begin with, it has rejected attempts to amend or repeal those provisions as construed by this court. Moreover, it has enacted Insurance Code section 10088 as an exception to the general rule of sections 530 and 532, and thereby made plain the continuing viability of this court's interpretation of those provisions: *"Notwithstanding the provisions of Section 530, 532,* or any other provision of law, and in the absence of an endorsement or an additional policy provision specifically covering the peril of earthquake, no policy which by its terms does not cover the peril of earthquake shall provide or shall be held to

provide coverage for any loss or damage when earthquake is a proximate cause regardless of whether the loss or damage also directly or indirectly results from or is contributed to, concurrently or in any sequence by any other proximate or remote cause, whether or not covered by the policy." (Italics added.)[2]

### III

It follows from my discussion above that the Court of Appeal misread *Sabella* and *Partridge* and accordingly erred in concluding that the trial court's ruling on plaintiffs' motion for a directed verdict on the issue of coverage was improper.

The Court of Appeal chose not to address the contentions other than those going to coverage evidently on the assumption that the judgment had to be reversed in its entirety as *necessarily* predicated on a determination that the policy did in fact cover the loss in question. In so doing, however, it erred. In their complaint plaintiffs alleged facts, and at trial they introduced evidence, to support the jury's findings of breach of the covenant of good faith and fair dealing and its award of compensatory and punitive damages on grounds other than defendant's decision to deny the claim.

Accordingly, I would reverse the judgment of the Court of Appeal and remand the cause to that court with directions to address the noncoverage issues.

**BROUSSARD, J.**—I dissent.

The trial court properly granted a directed verdict on the coverage issue whether we view this case as one of concurrent causation or one of successive causation. If the case is viewed as one of concurrent causation, coverage is established by *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123]. Neither the majority nor the

---

[2] As Michael E. Bragg, assistant counsel to State Farm Insurance Companies has stated: "[T]he insurance industry introduced several bills during the 1982 and 1983 legislative sessions which would have either repealed or amended both sections. These efforts were strongly opposed . . . and each of the bills died early in the legislative process. [¶] Realizing that broad legislation to resolve concurrent causation had little chance of passage, the insurance industry focused its attention on the one peril whose catastrophic potential endangered its very solvency—the peril of earthquake. Unsuccessful efforts were made during the 1983 session to legislatively exclude earthquake losses from property insurance policies which did not specifically cover earthquakes. Finally, some relief was achieved in 1984 with the passage of Assembly Bill 2865, which became effective on January 1, 1985[, codified as chapter 8.5 of the Insurance Code, section 10081 et seq.]." (Bragg, *Concurrent Causation and the Art of Policy Drafting: New Perils for Property Insurers* (1985) 20 Forum 385, 398, fn. omitted.)

concurring opinions dispute this conclusion; their position is that the case must be analyzed as a case of successive causation.

Even when the case is analyzed as one of successive causation, there is coverage as a matter of law. Under *Sabella* v. *Wisler* (1963) 59 Cal.2d 21, 31 [27 Cal.Rptr. 689, 377 P.2d 889], there is coverage if negligent construction, the insured cause, was the "efficient" proximate cause of the loss, " 'the one that sets others in motion.' " The majority so recognize. (Maj. opn., p. 403.) However, the majority erroneously conclude that if the earth movement, the excluded cause, was the "efficient" proximate cause there is no coverage under *Sabella*. (*Ibid.*)

Contrary to the majority opinion, *Sabella* does not establish that there can be no recovery in cases where the efficient cause is excluded and the immediate cause, the one which directly causes the loss, is insured. *Sabella* did not involve an exclusion of the efficient cause. *Sabella* merely points out that when the efficient cause is the excluded cause and the immediate cause is the insured cause the case is governed by Insurance Code section 532. A number of cases prior to *Sabella* permitted recovery when the efficient cause was excluded and the immediate cause was the insured cause. *Sabella* cited one with approval in discussing the Insurance Code section. (59 Cal.2d 21, 33.) It did not overrule these cases, and the majority should not overrule them with or without discussion. Under those cases we look to the language of the policy, construing it in accordance with ordinary insurance principles, and when this is done in the instant case, coverage is clear.

In *Sabella,* a sewer line ruptured due to negligence of a third party, the insured and efficient cause, and emptied waste water into loose fill, causing the house to settle. Settlement was the excluded cause and the immediate cause. *Sabella* held there was coverage and that if the policy were interpreted to exclude coverage it would violate Insurance Code section 530. (59 Cal.2d at pp. 33-36.)

*Sabella* should not be read as holding that in the converse situation where the efficient cause is excluded and the immediate cause is the insured cause there is no coverage. The issue was not directly presented. The court said that Insurance Code section 532 applied to that situation, and in this connection cited the landmark case of *Pacific etc. Co.* v. *Williamsburgh City Fire Ins. Co.* (1910) 158 Cal. 367, 372 [111 P. 4]. (59 Cal.2d at pp. 33-34.) There were a number of cases in addition to *Pacific* where the efficient cause was the excluded cause and the immediate cause was the insured cause, and the courts found coverage. *Sabella* did not discuss or overrule them. While there was unqualified language in *Sabella* that the loss is to be attributed to the efficient cause, the language should be read in the light of the circum-

stances of the case, as applying to the issue before it, namely, when the efficient cause is the insured cause. The language should not be read as stating a rule applicable when the efficient cause is the excluded cause.

A number of cases have permitted recovery where the insured cause is the immediate cause and the excluded cause is the efficient cause. In the landmark case of *Pacific etc. Co.* v. *Williamsburgh, supra,* 158 Cal. 367, 372, where the insured cause was fire and the excluded cause was earthquake, the insured's building burned as a result of fire caused in a nearby structure by the 1906 San Francisco earthquake. In allowing recovery under the policy, the court relied upon other cases involving fire caused by earthquakes and accidental death policies where illness, the excluded cause, caused the insured to drown or to fall in front of a moving train. (158 Cal. at pp. 373-376.) Although in all of the cases the efficient cause was the excluded cause, the courts had allowed recovery.

In *Pacific etc. Co.* v. *Williamsburgh,* the court started by pointing out the now well-settled rules that the policy will be construed to meet the reasonable expectations of the insured, the insuring clause will be broadly construed and exclusions strictly construed, and any ambiguity will be construed in favor of the insured. (158 Cal. at pp. 369-370; see also, e.g., *State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d at pp. 101-102; *Sabella* v. *Wisler, supra,* 59 Cal.2d at p. 30; *Prickett* v. *Royal Ins. Co. Ltd.* (1961) 56 Cal.2d 234, 237 [14 Cal.Rptr. 675, 363 P.2d 907, 86 A.L.R.2d 711]; *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914]; *Ransom* v. *Penn Mutual Life Ins.* (1954) 43 Cal.2d 420, 424 [274 P.2d 633].)

The court analyzed Civil Code sections 2626 and 2628 (now Ins. Code, §§ 530 and 532) and reasoned that the two sections must be read together and that the latter section does not permit the insurer to claim an exemption broader than that specified in the policy, and that no "rule of construction would justify us in holding that the section broadens the scope of the original exception." (*Pacific, supra,* 158 Cal. at p. 373.) The court then interpreted the language of the policy and allowed recovery.

Other cases allowing recovery by the insured when the efficient cause was an excluded cause and the immediate cause an insured cause include *Wilson* v. *Travelers' Insurance Co.* (1920) 183 Cal. 65, 67 [190 P. 366]; *Kinsey* v. *Pacific Mutual Life Ins. Co.* (1918) 178 Cal. 153, 155 [172 P. 1098]; *State Farm Fire & Cas. Co.* v. *Kohl* (1982) 131 Cal.App.3d 1031, 1035 et seq. [182 Cal.Rptr. 720]; *Chambers* v. *Kansas Life Ins. Co.* (1957) 156 Cal.App.2d 265, 267 et seq. [319 P.2d 387] and *Tierney* v. *Occidental Life Ins. Co.* (1928) 89 Cal.App. 779, 782 [265 P. 400].

When an insured looks at his policy and sees specific insured causes and numerous exclusions, he often may reasonably conclude that the insured causes and the excluded causes are mutually exclusive. As to many of the excluded causes, it may be difficult, if not impossible, to conceive of a situation where the excluded cause and the insured cause could combine to cause a loss. Thus he may reasonably conclude that the insurer out of an abundance of caution has sought to make clear that there is no coverage where an excluded cause alone causes the loss and never turn his mind to the rare possibility that the excluded cause and the insured cause might combine to cause a loss. For example, an insured purchasing a fire policy on his home believes that, if his home burns, he will be paid; he does not think that the 25 or 50 exclusions in his policy exclude 25 or 50 types of fires unless the policy makes it abundantly clear either by express statement or necessary implication.[1] Accordingly, when the insured cause is the immediate cause of loss as in the fire illustration, coverage should exist unless the language of the policy makes it clear that coverage is excluded when the excluded occurrence causes the insured cause to in turn cause the loss.

This principle, which has long been applied to policies that specify the risk, such as fire insurance policies which were the predecessor of the instant all-risk policy, should be generally applied to all-risk policies where the risks insured are not specified individually but only as the risks not excluded. To adopt a rule less favorable to the insured would render the "all risk" policy misleading. By its terminology this type of policy purports to broaden coverage as compared to a specified-risk policy covering the same type of losses. Further, the incentive for the insurer to read the coverage as mutually exclusive of the exclusions is greater because the format of the policy means that if a cause is not excluded it is an insured cause, so that if the loss were caused *solely* by it there would be coverage. It is all the more reasonable for the insured to conclude that the purpose of the exclusion is to exclude losses caused solely by one or more of the excluded causes rather

[1] Cases of necessary implication in multiple-cause cases differ on the basis whether the policy insures specified risks or is an all-risk policy. When the policy insures specified risks, the exclusion will be effective in multiple-cause cases where the exclusion necessarily assumes existence of the insured cause. For example, in an automobile liability policy an exclusion of teenage drivers necessarily assumes that the insured cause, use of the automobile, is present. When the policy is an all-risk policy, the exclusion will be given effect when the asserted insured cause necessarily relates to the excluded cause. For example, when a homeowner's comprehensive liability policy excludes coverage for injuries arising out of the use and ownership of motor vehicles, the insurer is not liable for causes of action based on negligent entrustment because the alleged insured cause, negligent entrustment, is necessarily related to the use and ownership of the vehicle. (*Safeco Ins. Co.* v. *Gilstrap* (1983) 141 Cal.App.3d 524, 527 et seq. [190 Cal.Rptr. 425]; see *Hartford Fire Ins. Co.* v. *Superior Court* (1983) 142 Cal.App.3d 406, 413 et seq. [191 Cal.Rptr. 37, 39 A.L.R.4th 189]; *Allstate Ins. Co.* v. *Jones* (1983) 139 Cal.App.3d 271, 275 [188 Cal.Rptr. 557]; *State Farm Fire & Cas. Co.* v. *Camara* (1976) 63 Cal.App.3d 48, 50 et seq. [133 Cal.Rptr. 600].)

than a purpose to exclude cases of multiple causation when an insured cause occurs.

When we interpret the policy in the instant case under the settled principles applicable to interpretation of insurance policies, *Wilson v. Travelers' Insurance Co., supra,* 183 Cal. 65 is controlling. There the policy provided for recovery for personal injury caused by train wreckage but included within the long list of exclusions "injury resulting wholly or partly from any of the following to wit: . . . explosives of any kind." (183 Cal. at p. 67.) The insured was seated in a passenger car of a train when a violent explosion occurred in the toilet room, with parts of the passenger car causing injury to the insured. The court reasoned: "If we must look for the cause of the injuries to the first cause, it would never be the wreckage of the car which is itself, a result and not a cause." (183 Cal. at p. 68.) The court went on to conclude that if the insured had been directly injured by a bomb placed in his lap which then exploded, the exclusion would have been effective to eliminate coverage but where the explosion caused parts of the wrecked car to injure the insured there was coverage under the established rule of construction requiring ambiguities to be construed in favor of the insured. (183 Cal. at p. 69.)

In *Wilson, supra,* 183 Cal. 65, the efficient cause was obviously the excluded cause, explosives, and the immediate cause was the insured cause, train wreckage. The court allowed recovery based on the language of the policy, contrary to the majority's rule which would exclude coverage whenever the efficient cause was excluded. Further, *Wilson* points to the proper interpretation of the instant policy.

In the instant case, the policy states: "This policy does not insure against loss: . . . caused by, resulting from, contributed to, or aggravated by any earth movement, . . ." The policy also excludes "loss: . . . by . . . settling, cracking, shrinkage. . . ." The words refer to a "loss" related to the earth movement or other exclusions, and do not deal with a situation where the excluded causes do not themselves produce the loss but merely set in motion the insured cause which in turn causes the loss. The exclusion clause is ambiguous as to whether the excluded causes alone or in conjunction with other excluded causes limit coverage or whether coverage is also limited when the excluded cause sets in motion an insured cause which in turn causes the loss. An insured can reasonably conclude that only the former is excluded from coverage and that when the immediate cause is an insured cause there is coverage.[2]

---

[2] The majority state that they do not overrule *Pacific etc. Co.* v. *Williamsburgh City Fire Ins. Co., supra,* 158 Cal. 367. Rather, the majority say, "We approve of the fundamental principles of insurance law discussed in *Williamsburgh,* we recognize that it would be unrealistic

It is true that the majority has adopted rules which provide symmetry— there is coverage if the efficient cause is insured but not if it is excluded. But we are not architects or engineers who often work towards symmetry. As judges, our goal is to search for justice. The basic rules governing interpretation of insuring clauses and exclusion clauses discussed above make it clear that insuring clauses and exclusions are not treated equally, and there is no justification for symmetry.

Moreover, if symmetry were a goal, the majority has it backward. Assuming that in multiple-cause cases we must choose between coverage where the insured cause is the efficient cause and where it is the immediate cause, common sense should tell us that there should be coverage when the immediate rather than efficient cause of loss is insured. An insured who has his house burn as a result of a fire from a nearby falling tree has a greater expectation that his fire insurance will provide coverage than he has when a fire causes the tree to fall crushing the house. But under the majority's rules, an exclusion for loss by falling trees will mean that the fire policy will provide coverage when the house is crushed but not when it burns.

As *Sabella* points out, a number of earlier decisions had held that the insured would recover when, as in that case, the efficient cause was the insured cause. A number of other earlier cases had recognized that the insured would recover when the efficient cause was an excluded cause where the immediate cause was an insured cause, depending on the language of the policy. The language of insurance policies is not ordinarily directed to the multiple-cause situation and rarely specifies expressly or by clear implication that there is no coverage when an excluded cause sets in motion an insured cause which in turn causes the loss. Two Court of Appeal cases had observed generally that it "has been held that when two causes join in causing an injury, one of which is insured against, the insured is covered by the policy." (*Zimmerman* v. *Continental Life Ins. Co.* (1929) 99 Cal.App. 723, 726 [279 P. 464]; *Hughes* v. *Potomac Ins. Co.* (1962) 199 Cal.App.2d

---

to discuss at length a case analyzing property policy *language* that is now obsolete." (Maj. opn. at p. 403, italics added.)

I agree that no purpose would be served by analyzing the *"obsolete" language* of the Williamsburgh policy. But we should analyze the *"modern" language* of the exclusion clause in the policy before us under the fundamental principles of insurance law discussed in *Williamsburgh*. I have done so above. However, the majority do not look at the language of the exclusion but, contrary to the fundamental principles, merely adopt an automatic rule denying recovery when the immediate cause is insured and the efficient cause is excluded.

Both before and after *Sabella*, coverage has been *held* to exist in California decisions when the efficient cause was excluded. The majority cite no California case, before or after *Sabella*, which *held* that there was no coverage when the immediate cause of loss was the insured cause. In short, apart from the one ambiguous sentence in *Sabella*, there is no precedent in California for the majority's rule, and every successive causation case where the immediate cause is insured has found coverage, contrary to today's majority holding.

239, 244 [18 Cal.Rptr. 650] [disapproved on another point in *Sabella* v. *Wisler, supra,* 59 Cal.2d at p. 34].)

Today's decision in effect repudiates long-settled principles of insurance policy interpretation without discussing the applicable case law. Applying those long-settled principles, the trial court properly concluded that there was coverage as a matter of law and ordered a directed verdict on the coverage issue. It is unfortunate that the majority do not discuss or distinguish the applicable cases, and accordingly they err in affirming the judgment of the Court of Appeal.

I would reverse the judgment of the Court of Appeal.